[No. S046378. Apr. 25, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES REED, Defendant and Appellant.

## COUNSEL

Cliff Gardner, under appointment by the Supreme Court, Delaine Renard and Gardner & Derham for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Donna B. Chew, Joan Killeen and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—This case concerns the admissibility of hearsay evidence to prove that a criminal defendant's prior conviction was for a "serious felony" within the meaning of Penal Code sections 667, subdivision (a), and 1192.7, subdivision (c). Over defendant's hearsay objection, the prosecution introduced two pieces of evidence from the record of defendant's prior assault conviction to show that in the prior crime defendant personally used a dangerous or deadly weapon (Pen. Code, § 1192.7, subd. (c)(23)): portions of the preliminary hearing transcript and a short excerpt from the probation officer's report. We conclude the preliminary hearing transcript excerpts were not inadmissible hearsay because they came within the former-testimony exception to the hearsay rule (Evid. Code, § 1291). The probation report fragment, however, was inadmissible because it contains hearsay that has not been shown to be within any exception to the hearsay rule (Evid. Code, § 1200).

### FACTS

Defendant was charged with several crimes, including second degree robbery, a serious felony. (Pen. Code, §§ 211, 212.5, 1192.7, subd. (c)(19).)[1] The information further alleged he had been convicted of two prior serious felonies, one of them a 1980 San Francisco conviction for assault with a deadly weapon or by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). In the first phase of a bifurcated jury trial, defendant was convicted of the current robbery, among other offenses.

In the second phase of trial, the prosecution introduced documentary evidence of defendant's 1980 conviction, by plea of guilty, for violation of section 245, subdivision (a)(1), as well as the testimony of a fingerprint expert to show defendant was the person who, under the name Gregory

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

McClanahan, suffered that conviction. In order to show defendant personally used a dangerous or deadly weapon in the prior assault, making it a serious felony under section 1192.7, subdivision (c)(23), the prosecution introduced two documents reflecting circumstances of the prior crime: part of the certified preliminary hearing transcript and a five-line excerpt from the probation officer's report. Defendant unsuccessfully objected to both documents on grounds of hearsay and lack of foundation.

The preliminary hearing transcript excerpts contained parts of the testimony of the assault victim and his wife, who were shopkeepers. The victim, Mr. Martinez, testified he saw defendant put a bottle of cognac in a wicker basket. Defendant was carrying a wooden cane. When Martinez asked defendant to put the bottle back, defendant denied having taken it. Martinez pulled the bottle from the basket, and the two began arguing. Martinez testified: "[T]he next thing I remember is waking up in General Hospital with my head split open . . . ." Martinez was struck on his forehead and nose. During the argument, and before Martinez was hit, a man who had earlier been in the store with defendant came back inside. Defendant's cane, broken, was introduced as an exhibit in the 1980 hearing.

Mrs. Martinez's testimony corroborated that of her husband as to defendant having a bottle in his basket and arguing with Mr. Martinez. The portion of Mrs. Martinez's testimony introduced at the current trial contains only an indirect identification of defendant as the assailant, in the form of her agreement with this leading question from defendant's attorney: "And so it would also be your testimony nobody in the store before this gentleman hit you—before Mr. McClanahan allegedly hit your husband on the head, nobody in the store threatened him with a bottle?"

The probation report excerpt read in its entirety as follows: "the defendant, Mr. McClanahan denied stealing the cognac, but, in fact, had the bottle in a wicker basket he was holding. Mr. Martinez then reportedly took the bottle from the basket, whereupon the defendant struck him on the head with a large heavy wooden cane, breaking the cane. Mr. Martinez was reportedly un-."

The jury found defendant was previously convicted of "assault with a deadly weapon with personal use thereof." The court imposed a five-year sentence enhancement for the prior assault under section 667, subdivision (a).

The Court of Appeal affirmed as to the section 667 enhancement for the prior assault. Relying on *People* v. *Castellanos* (1990) 219 Cal.App.3d 1163

[269 Cal.Rptr. 93], the court held the preliminary hearing transcript was admissible under a nonstatutory exception to the hearsay rule. The probation report excerpt, the court further held, was not within any exception, but its admission could not have prejudiced defendant because its contents were consistent with those of the preliminary hearing transcript. For the reasons that follow, we affirm the judgment of the Court of Appeal.

## DISCUSSION

Section 667, subdivision (a), provides for a five-year sentence enhancement for each prior serious felony conviction when a person is convicted of a new serious felony. A "serious felony" is one listed in section 1192.7, subdivision (c). (§ 667, subd. (a)(4).) Because not all the crimes listed in section 1192.7, subdivision (c), correspond to specific felonies defined by California law at the times of all prior convictions, this court has repeatedly faced questions as to the manner in which the trier of fact may determine whether a prior conviction was for a listed serious felony.

In *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736], we interpreted certain paragraphs of section 1192.7 as referring "not to specific criminal offenses, but to the criminal conduct described therein, and applicable whenever the prosecution pleads and proves that conduct." (37 Cal.3d at p. 832.) Although the defendant's prior conviction for second degree burglary did not on its face necessarily constitute burglary of an inhabited dwelling, so as to qualify as a serious felony (§ 1192.7, subd. (c)(18)), we upheld the finding of prior serious felony conviction because the defendant expressly admitted, in the current proceeding, that his prior conviction involved burglary of a residence. (37 Cal.3d at pp. 836-837.) Because of the admission, *Jackson* did not require us to decide how the nature of a prior conviction might be proven.

In *People* v. *Alfaro* (1986) 42 Cal.3d 627, 629 [230 Cal.Rptr. 129, 724 P.2d 1154], the question before us was " 'what evidence may be considered in determining whether a prior felony conviction involved burglary of a residence.' " Following dictum in *Jackson*, we limited proof to the judgment itself: for those offenses that were not by definition within section 1192.7's list, we held the prior conviction constituted a serious felony only if the facts bringing it within section 1192.7 were established by collateral estoppel, i.e., were necessarily adjudicated elements of the prior charge. (42 Cal.3d at pp. 633-636.)

*Alfaro*'s restriction of proof to the judgment itself was soon abandoned in *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d

1150]. On reexamination of the question, we concluded the case law supported a broader rule: the trier of fact may look to the entire *record of conviction* to determine the substance of the prior conviction. (*Id.* at p. 355.) Such a rule, we further reasoned, was both fair and reasonable. By broadening the allowable proof beyond matters necessarily adjudicated in the prior judgment, we implemented the intent of the electorate in including, within section 1192.7, terms that referred to conduct rather than to a specific crime. The aspect of the announced rule *restricting* proof to the record of conviction was also fair: "it effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial." (44 Cal.3d at p. 355.)

In *Guerrero* we declined to address any question regarding "what items in the record of conviction are admissible and for what purpose." (*People* v. *Guerrero, supra,* 44 Cal.3d at p. 356, fn. 1.)[2] The present case requires us to resolve two such issues of admissibility.

*The Preliminary Hearing Transcript Excerpts*

At the threshold, we consider whether the preliminary hearing transcript excerpts were within the record of the prior conviction, as required for their admission under *People* v. *Guerrero, supra,* 44 Cal.3d at page 355. Neither *Guerrero* nor *People* v. *Myers, supra,* 5 Cal.4th 1193, contains a definition of "record of conviction" or a discussion of what the term means in this context. Here, however, neither party argues the preliminary hearing transcript was outside the record, nor did defendant object on that basis below. We conclude the transcript was part of the record of the prior conviction, whether that term is used technically, as equivalent to the record on appeal (see *People* v. *Abarca* (1991) 233 Cal.App.3d 1347, 1350 [285 Cal.Rptr. 213]), or more narrowly, as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted. The transcript falls within even the narrower definition because the procedural protections afforded the defendant during a preliminary hearing tend to ensure the reliability of such evidence. Those protections include the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings.

---

[2]In *People* v. *Myers* (1993) 5 Cal.4th 1193 [22 Cal.Rptr.2d 911, 858 P.2d 301], we made clear the *Guerrero* rule applied equally to prior convictions suffered in other jurisdictions. As in *Guerrero,* we did not resolve any other evidentiary issues, holding only that the trier of fact could consider any evidence in the record of the foreign conviction "if not precluded by the rules of evidence or other statutory limitation." (*People* v. *Myers, supra,* 5 Cal.4th at p. 1201.)

Next, we consider defendant's hearsay objection. The preliminary hearing transcript excerpts from defendant's prior case were clearly introduced as hearsay. The transcript itself was hearsay, being evidence, other than by a testifying witness, introduced to show the proceedings that occurred in the prior case. The transcript, moreover, contained further hearsay in the form of out-of-court statements of the witnesses at the prior hearing, introduced for their truth, i.e., to show the nature of defendant's conduct underlying his prior assault conviction. (Evid. Code, § 1200.)

Respondent, however, contends the preliminary hearing transcript excerpts, as well as the probation report fragment, were introduced for the assertedly *nonhearsay* purpose of showing defendant, in the prior proceedings, admitted and was convicted of personally using a deadly weapon. Respondent relies on the principle that an out-of-court statement may be relevant for the nonhearsay purpose of explaining, or giving content to, a defendant's subsequent admissions. (See, e.g., *People* v. *Turner* (1994) 8 Cal.4th 137, 189-190 [32 Cal.Rptr.2d 762, 878 P.2d 521].)

We reject the contention. Respondent offers no explanation as to how the prior testimony demonstrates the meaning or content of defendant's guilty plea to assault with a deadly weapon or by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)) and his subsequent conviction for that offense. No evidence suggests that in his plea defendant was asked to, or did, admit any particular facts stated in the preliminary hearing or probation report, other than those facts necessary to the assault charge itself. As succinctly stated in defendant's brief, "Mr. Reed pled guilty to an information, not to a preliminary hearing transcript." The present case, therefore, is not comparable to one in which a *charging instrument* is introduced to show the allegations that the defendant, by plea, subsequently admitted. (See, e.g., *People* v. *Harrell* (1989) 207 Cal.App.3d 1439, 1444 [255 Cal.Rptr. 750] [prior information alleged residential burglary; defendant pled no contest to burglary "as charged in the Information."]; *People* v. *Batista* (1988) 201 Cal.App.3d 1288, 1293-1294 [248 Cal.Rptr. 46] [prior information alleged residential burglary; at plea hearing, defendant said he understood and admitted the charges].)[3]

 We proceed to consider whether the preliminary hearing transcript, while hearsay, was nonetheless admissible. As with all multiple hearsay, the

---

[3]Even if a valid theory of nonhearsay relevance existed for the disputed evidence, the evidence here was in fact "offered" for a hearsay purpose. (Evid. Code, § 1200, subd. (a).) At trial, the prosecution theory of relevance was straightforward and clearly involved a hearsay use: in colloquy with the court, the prosecutor explicitly offered the preliminary hearing transcript to show the prior conviction "concerned an assault by this defendant personally with the use of a cane in which he broke the cane over the victim's forehead." Because the prosecution offered the evidence only to prove the truth of the matter stated, defendant had no

question is whether each hearsay statement fell within an exception to the hearsay rule. (Evid. Code, § 1201.) The certified transcript, introduced to prove the events of the prior proceeding, was within the exception for official records (Evid. Code, § 1280; *People* v. *Abarca, supra,* 233 Cal.App.3d 1347, 1350); indeed, the transcript is, by statute, deemed prima facie evidence of the prior testimony. (Code Civ. Proc., § 273.) Defendant does not argue otherwise; his focus is on the former testimony itself.

Evidence Code section 1291, subdivision (a), provides: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] (1) The former testimony is offered against a person who offered it in evidence in his own behalf on the former occasion or against the successor in interest of such person; or [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

Defendant does not dispute that the evidence met the requirements of paragraph (1) or (2) of Evidence Code section 1291, subdivision (a).[4] Rather, defendant contends the preliminary hearing transcript excerpts do not come within this hearsay exception because the witnesses, Mr. and Mrs. Martinez, were not shown to be unavailable. We disagree: the witnesses were *legally* unavailable because, under the rule announced in *People* v. *Guerrero, supra,* 44 Cal.3d 343, the prosecution was precluded from presenting any evidence *outside the record of conviction* to prove the circumstances of the prior crime.

██ The fundamental purpose of the unavailability requirement is to ensure that prior testimony is substituted for live testimony, the generally preferred form of evidence, only when necessary. "[F]ormer testimony often is only a weaker substitute for live testimony. . . . If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version. When two versions of the same evidence are available, longstanding principles of the law of hearsay, applicable as well to Confrontation Clause analysis, favor the better evidence. [Citation.] But if the declarant is unavailable, no 'better' version of the evidence exists, and the

---

opportunity to contest nonhearsay relevance or request a limiting instruction. (See Evid. Code, § 355.)

[4]At the prior preliminary hearing, defendant's attorney examined both witnesses. Indeed, the excerpt introduced from Mrs. Martinez's testimony was from her examination by defendant's attorney.

former testimony may be admitted as a substitute for live testimony on the same point." (*United States* v. *Inadi* (1986) 475 U.S. 387, 394-395 [89 L.Ed.2d 390, 398, 106 S.Ct. 1121].) As this court, quoting Wigmore's treatise, has observed, " 'The general principle upon which depositions and former testimony should be resorted to is the simple principle of *necessity*,— i.e., the absence of any other means of utilizing the witness' knowledge.' " (*People* v. *Rojas* (1975) 15 Cal.3d 540, 549 [125 Cal.Rptr. 357, 542 P.2d 229, 93 A.L.R.3d 1127], quoting 5 Wigmore on Evidence (Chadbourn ed. 1970) § 1402, p. 148.)

By holding in *Guerrero* that the trier of fact may look to the entire record of conviction *"but no further"* (*People* v. *Guerrero*, *supra*, 44 Cal.3d at p. 355), we precluded the prosecution from calling live witnesses to the criminal acts in the prior case. The People "may not relitigate the facts behind the record." (*People* v. *Johnson* (1992) 3 Cal.4th 1183, 1242 [14 Cal.Rptr.2d 702, 842 P.2d 1].) As one Court of Appeal summarized the rule, "the prosecution is not permitted to relitigate the circumstances of a past offense by introducing evidence outside the record." (*People* v. *Smith* (1988) 206 Cal.App.3d 340, 344, fn. 6 [253 Cal.Rptr. 522].) Live testimony from Mr. and Mrs. Martinez would have been evidence outside the record, used to relitigate the circumstances of the prior offense. Under *Guerrero*, the prosecution was absolutely barred from presenting such evidence. The witnesses' *live* testimony was thus unavailable as a matter of law.

Evidence Code section 240, which defines the phrase "unavailable as a witness," makes no specific mention, it is true, of the *Guerrero* rule barring live testimony in these circumstances. Section 240, subdivision (a), delineates five types of unavailability: testimonial privilege (par. (1)); disqualification (par. (2)); inability to attend because of death or illness (par. (3)); absence under circumstances in which the court's process cannot compel attendance (par. (4)); and absence despite the proponent's exercise of reasonable diligence to compel attendance (par. (5)). In this case, the People made no showing Mr. and Mrs. Martinez were physically unavailable under paragraph (3), (4) or (5). As to legal unavailability under paragraphs (1) and (2), the *Guerrero* rule is neither a testimonial privilege nor one of the grounds of disqualification provided in Evidence Code section 701. (See also Evid. Code, § 700 [no nonstatutory grounds of disqualification].)

Mr. and Mrs. Martinez were, nonetheless, legally unavailable as witnesses on this matter. California courts have not interpreted Evidence Code sections 240 and 1291 so strictly as to preclude unlisted variants of unavailability. Rather, courts have given the statutes a realistic construction consistent with their purpose, i.e., to ensure that certain types of hearsay, including former

testimony, are admitted only when no preferable version of the evidence, in the form of live testimony, is legally and physically available.

In *People* v. *Rojas, supra,* 15 Cal.3d 540, this court held a witness who was physically and mentally able to testify, but who simply refused to do so out of fear for himself and his family, was unavailable within the meaning of Evidence Code section 240, subdivision (a)(3). We explained that "[t]he maxim *expressio unius est exclusio alterius* is inapplicable . . . 'where no reason exists why persons and things other than those enumerated should not be included, and manifest injustice would follow by not including them. . . .' [¶] Section 240 clearly expresses a legislative intent to deem a person 'unavailable as a witness' in specific cases which were recognized under existing law. [Citation.] No [] [sufficient] reason appears to us why the former testimony of a witness who is present in court but refuses to testify because he is in fear of his safety or that of his family should not be used when that of a witness, who claims privilege or who is absent from the hearing and his attendance cannot be compelled or procured, can be used." (15 Cal.3d at p. 551, fn. omitted; accord, *People* v. *Francis* (1988) 200 Cal.App.3d 579, 587 [245 Cal.Rptr. 923] [Witness who refuses to testify is unavailable *"even though such a witness does not fit neatly into one of the subdivisions of Evidence Code section 240."* (Italics added.)].)

Similarly, in *People* v. *Shirley* (1982) 31 Cal.3d 18 [181 Cal.Rptr. 243, 723 P.2d 1354], we held a previously hypnotized witness, while not "incompetent in the strict sense" under Evidence Code section 701 (31 Cal.3d at p. 67), *was* disqualified from testifying and, hence, unavailable as a witness under Evidence Code section 240, subdivision (a)(2) (31 Cal.3d at p. 72, fn. 60), because her posthypnotic testimony did not meet admissibility requirements for scientific evidence. Since the witness was unavailable to testify on the matter on which she had been hypnotized, her prehypnotic preliminary hearing testimony on the same subject was potentially admissible under Evidence Code section 1291. (31 Cal.3d at p. 72, fn. 60; accord, *People* v. *Guerra* (1984) 37 Cal.3d 385, 427 [208 Cal.Rptr. 162, 690 P.2d 635].)[5]

In accord with this pragmatic approach to the concept of unavailability in the context of admission of former testimony, we decline to interpret the unavailability requirement of Evidence Code section 1291 strictly as referring exclusively to the kinds of legal unavailability expressly listed in

---

[5]In light of Evidence Code section 700's preclusion of nonstatutory grounds for disqualification, it could be argued the *Shirley* court erred in identifying Evidence Code section 240, subdivision (a)(2), as embracing the particular type of unavailability involved in that case. We rely on *Shirley* not for this specific point, but as support for the general principle that the express provisions of Evidence Code section 240 do not fully and exclusively define unavailability for purposes of Evidence Code section 1291.

Evidence Code section 240. The terms of subdivision (a) of Evidence Code section 240 do not, in our view, state the exclusive or exact circumstances under which a witness may be deemed legally unavailable for purposes of Evidence Code section 1291. ▪▪▪ Under our rule in *Guerrero*, the prosecution in this case was as completely barred from calling the Martinezes as if they had been disqualified or their evidence privileged. No reason appears why they should be considered any less "unavailable" than a disqualified or privileged witness. Moreover, maintaining such a distinction would deprive the trier of fact of testimony that is not available in any other form, and from witnesses whom defendant has already had the opportunity, with similar motive, to cross-examine on the matter at issue. To enforce such a bar, without adequate justification, would be unfair to the People and detrimental to the administration of justice.

Defendant contends admission of the preliminary hearing transcript under Evidence Code section 1291 would violate his due process right to be confronted with the witnesses against him, as guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution.[6] He cites no authority, however, holding the unavailability required under the federal Constitution to be different in kind or degree than that required under Evidence Code section 1291, and we are aware of none. The unavailability requirement of the confrontation guarantee, like that of the hearsay exception, is a "rule of necessity" (*Ohio* v. *Roberts* (1980) 448 U.S. 56, 65 [65 L.Ed.2d 597, 607, 100 S.Ct. 2531]): use of former testimony is permitted only when made necessary by the legal or physical unavailability of nonhearsay evidence. Because *Guerrero* absolutely precluded the People from presenting the Martinezes' live testimony to show the serious-felony nature of defendant's prior conviction, that testimony was as unavailable to the prosecution under the Constitution as it was under Evidence Code section 1291.

Defendant also argues the constitutional confrontation guarantee uniformly requires a "case specific showing" of unavailability, which assertedly

---

[6]Respondent asserts there is no constitutional right to confront witnesses in a sentence enhancement proceeding. The authority cited in respondent's brief, however, concerns the use of hearsay in state or federal *sentencing* decisions, rather than in trials on enhancement allegations. The United States Supreme Court has held that "under recidivist statutes where an habitual criminal issue is 'a distinct issue' [citation] . . . [d]ue process . . . requires [the defendant] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own." (*Specht* v. *Patterson* (1967) 386 U.S. 605, 610 [18 L.Ed.2d 326, 330, 87 S.Ct. 1209]; accord, *Camillo* v. *Armontrout* (8th Cir. 1991) 938 F.2d 879, 881 ["When enhanced punishment depends upon evidence of prior criminal convictions, defendants have a right to procedural due process," including confrontation of witnesses. (Fn. omitted.)].) *Oyler* v. *Boles* (1962) 368 U.S. 448 [7 L.Ed.2d 446, 82 S.Ct. 501], that respondent cited at oral argument, is not on point: that decision concerned the adequacy of notice of a recidivism charge, rather than the right to confront witnesses in the trial of such a charge.

was not made here. Where the witness's testimony is *legally* precluded, however, the proponent can logically do no more than show the testimony is within the legal bar; no more specific showing of unavailability is possible or required. For the prosecutor to attempt to call the Martinezes would have been a futile act, which the law will not demand.

Finally, defendant argues that since the *Guerrero* rule limiting proof to the record of conviction was purportedly adopted for the benefit of the defense—to prevent "harm akin to double jeopardy and denial of speedy trial" (*People* v. *Guerrero, supra*, 44 Cal.3d at p. 355)—the rule should not be used *against* him to preclude confrontation of witnesses. Defendant, however, did not seek in this case to have the witnesses produced or to cross-examine them anew; he only objected on hearsay grounds to admission of their prior testimony. We express no opinion as to whether a defendant would be entitled to call live witnesses to dispute circumstances of the prior offense; we hold only that since the *prosecution* is not permitted to present live testimony outside the record of conviction, it is allowed, under Evidence Code section 1291, to present the prior testimony of witnesses whom the defendant has already had an opportunity and incentive to cross-examine. (Evid. Code, § 1291, subd. (a)(2).)

Having concluded the preliminary hearing excerpts were admissible under Evidence Code section 1291, we need not decide whether the Court of Appeal correctly held them admissible under a nonstatutory exception to the hearsay rule, as articulated in *People* v. *Castellanos, supra*, 219 Cal.App.3d 1163, and other cases. The *Castellanos* court opined no showing of unavailability was required because the preliminary hearing transcripts, "albeit hearsay, are not being offered against the defendant in the traditional sense, but are merely being offered for the neutral inquiry as to the nature of the earlier offense . . . ." (*People* v. *Castellanos, supra*, 219 Cal.App.3d at p. 1174.) Apparently referring to the defendant's plea of guilty in the prior case, the *Castellanos* court then suggested the transcripts were "admissible as exceptions to the hearsay rule to explain his admissions." (*Ibid.*) The *Castellanos* reasoning and result were followed in *People* v. *Goodner* (1990) 226 Cal.App.3d 609 [276 Cal.Rptr. 542] and *People* v. *Gonzales* (1994) 29 Cal.App.4th 1684 [35 Cal.Rptr.2d 450]. Although we reach the same result as those courts, we do not endorse their reasoning. Neither *Castellanos* nor its progeny explained in what sense the adjudication of a prior serious felony allegation is a "neutral inquiry," or how testimony of percipient witnesses at a preliminary hearing serves to explain the meaning or content of a defendant's guilty plea. Nor is it apparent from *Castellanos* why, if the evidence was admissible only to show the meaning of another statement, the court nonetheless characterized it as hearsay.

Respondent also suggests *all* types of hearsay may be admissible to prove prior convictions. The decisions cited, however, do not support this broad proposition: *People* v. *Bowen* (1992) 11 Cal.App.4th 102, 107 [14 Cal.Rptr.2d 40] involved the court's use of hearsay at *sentencing*, not in a trial on prior conviction allegations; the remaining cases (e.g., *People* v. *Matthews* (1991) 229 Cal.App.3d 930, 937 [280 Cal.Rptr. 134]) concern the use of prison records to prove prior convictions and prison terms, as specifically authorized by section 969b.

*The Probation Report Excerpt*

A threshold question arises whether the excerpt from the probation officer's report, like the reporter's transcript of the preliminary hearing, is part of the record of the prior conviction. We concluded above that, whether a broad or narrow definition of "record of conviction" is used, the preliminary hearing transcript is part of the record because the procedural protections afforded the defendant, and the accuracy of a reporter's transcript, make such evidence relatively reliable. Whether the probation officer's report also falls within the more narrow definition of record of conviction presents a closer question. We decline to resolve that question because, as explained below, it is clear the evidence should have been excluded as inadmissible hearsay.

■ As with the preliminary hearing excerpts, the brief excerpt from a probation officer's report in the prior case was multiple hearsay. Aside from the out-of-court nature of the probation officer's statement itself, the report excerpt includes the officer's assertions that certain events "reportedly" occurred during the prior assault. Narration of "reported" events is by definition based on the statements of others. Indeed, unless the probation officer was a percipient witness to the assault, all of the narration contained in the excerpt must have been drawn from other people's previous statements.

The report fragment does not identify the declarant or declarants from whose statements the probation officer drew his factual summary. There is no evidence the excerpt was based on defendant's own admissions to the officer, so as to fall within the hearsay exception for party admissions. (Evid. Code, § 1220; see *People* v. *Garcia* (1989) 216 Cal.App.3d 233, 237 [264 Cal.Rptr. 662] [defendant's admission contained in probation report]; *People* v. *Abarca, supra*, 233 Cal.App.3d at p. 1351 [defendant's admission contained in transcript of change-of-plea hearing].) Nor does any other exception to the hearsay rule appear applicable.

We conclude the excerpt from the probation officer's report was inadmissible hearsay. (Accord, *People* v. *Williams* (1990) 222 Cal.App.3d 911, 917

[272 Cal.Rptr. 212].) Its introduction, however, caused defendant no prejudice, as the report excerpt merely duplicated the evidence regarding personal use contained in the preliminary hearing transcript excerpts, which we have determined were properly admitted under Evidence Code section 1291. The evidentiary error was harmless under the standard stated in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

## CONCLUSION

The Court of Appeal correctly held that the hearsay rule did not preclude admission of a preliminary hearing transcript from the record of defendant's 1980 conviction and that admission of a probation report excerpt from the same record was harmless error. The judgment of the Court of Appeal is therefore affirmed.

Lucas, C. J., Kennard, J., Baxter, J., George, J., and Chin, J., concurred.

**MOSK, J.**—I concur in the judgment. After review, I have found no reversible error or other defect.

I also largely concur in the opinion prepared for the court by Justice Werdegar. On one point, however, I must part company. I would go further and expressly disapprove *People* v. *Castellanos* (1990) 219 Cal.App.3d 1163 [269 Cal.Rptr. 93]; *People* v. *Goodner* (1990) 226 Cal.App.3d 609 [276 Cal.Rptr. 542]; and *People* v. *Gonzales* (1994) 29 Cal.App.4th 1684 [35 Cal.Rptr.2d 450]. As Justice Werdegar's analysis makes plain, they are erroneous and mischievous.