[No. C028465. Third Dist. July 10, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL McCEE FOUNTAIN, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

62

**COUNSEL**

Lori Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney

General, Michael J. Weinberger and Thomas Y. Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MORRISON, J.**—Defendant Carl McCee Fountain was convicted by a jury of lewd and lascivious conduct with a child under 14 years of age (Pen. Code, § 288, subd. (a)—count I; hereafter all section references to an undesignated code are to the Penal Code), first degree burglary (§§ 459, 460—count II), and furnishing alcohol to a minor (Bus. & Prof. Code, § 25658, subd. (a)—count III). As to count I, the jury also found that defendant engaged in substantial sexual conduct with the victim (§ 1203.066, subd. (a)(8)), that he befriended the victim for the purpose of violating section 288, and that he committed the section 288 violation in the course of committing a burglary (§ 667.61, subd. (d)(4)).

In a trial by court, defendant was found to have two prior convictions which constituted strikes (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(e)), one for battery with serious bodily injury (§ 243, subd. (d)), incurred in juvenile proceedings, and the other in adult court for robbery (§ 211).

Sentenced to state prison for 80 years to life, defendant appeals contending the trial court erred by (1) finding his prior juvenile adjudication for violation of section 243, subdivision (d) was a strike; (2) admitting evidence of an uncharged offense; (3) using his prior juvenile adjudication as a strike, which denied him his right to a jury trial and due process; (4) imposing a term of 75 years to life on count I, and (5) sentencing him under both sections 667.61 and 667. We find that only defendant's first contention has merit, and, therefore, we shall vacate the sentence and remand for further proceedings.

### FACTS

In 1997, 13-year-old LeeAnn lived with her mother in an apartment next door to a bar where her mother worked. On April 1, LeeAnn was upset after breaking up with her boyfriend and went to the bar to talk with her mother. Her mother, who was busy with customers, spoke with LeeAnn for a few minutes and told her to go home.

Instead of going home, LeeAnn took a walk. As she walked, a convertible, driven by defendant, drove up beside her. Defendant told LeeAnn he thought she was someone else and then asked her why she was crying. She told him that she had just broken up with her boyfriend. Defendant told her that his

name was "Carl," that he was having problems with his girlfriend, that today was his 21st birthday, and that he drank when he had problems. Defendant asked LeeAnn her age and she told him she was 13. He said she looked 17 or 18, but she repeated that she was 13. Defendant told LeeAnn he needed someone to have a drink with and she got into the car with him.

Defendant drove to J&J Liquors where he purchased a half-pint of vodka for her and a 40-ounce bottle of beer for himself. By questioning LeeAnn, defendant learned she lived with her mother, and that no one was at her home. Defendant asked if they could go to her home and she replied "Yes."

At LeeAnn's apartment she drank the vodka and he drank the beer. Although not sure, LeeAnn thought she "finished" the bottle of vodka. Defendant asked if she wanted more and she said she did not think so. Defendant told her, "Yeah, you need another bottle." Defendant helped LeeAnn get off the couch, she felt dizzy and had some trouble walking. As they again drove to J&J Liquors, LeeAnn told defendant she was "really feeling the effects of the vodka." He told her "that was good."

Defendant purchased another bottle of vodka and returned with LeeAnn to her apartment. LeeAnn had difficulty unlocking the door and defendant had to assist her. Inside the apartment, LeeAnn told defendant she felt "[v]ery dizzy, very sleepy." LeeAnn took one more drink of vodka and the next thing she recalled was defendant helping her off the couch and suggesting she would be more comfortable in the bedroom. Defendant guided LeeAnn into the bedroom where she "fell onto the bed."

Defendant removed her jeans and underwear. LeeAnn realized she was too intoxicated to stop defendant and asked if he was using a condom because "I didn't know this man and because I couldn't get him off of me."

While defendant was with LeeAnn, Jacquelyn Rogers, a coworker of LeeAnn's mother and a neighbor, left the bar to go home. Rogers saw defendant's car, with which she was unfamiliar, in front of LeeAnn's apartment. Concerned, Rogers tried to call LeeAnn but received no response. Rogers then called LeeAnn's mother and told her of the vehicle. LeeAnn's mother asked Dennis Miller, a friend in the bar, to "check on" LeeAnn and gave him a key.

Miller entered LeeAnn's apartment and saw defendant, who was nude, withdraw his penis from LeeAnn's vagina. Miller exclaimed, "What the hell are you doing?" and told defendant that LeeAnn was "only a little girl, 13

years old." Defendant said, "She told me she was 21." Defendant put on his clothes and fled.

Crystal B. testified that in July 1993, when she was 14 years old and had known defendant approximately two months, he drove to her home for the purpose of taking her to his mother's house to work and spend the night. When Crystal's younger brother got into the car with them, defendant told him there was not room enough because he was picking up other people. Defendant left with Crystal and drove to J&J Liquors, which was previously Circus Liquors. He asked Crystal if she wanted anything to drink and she replied, "Okay." He bought a bottle of wine and then drove to a location across the street from where Crystal's cousin lived.

Crystal, who was not an experienced drinker, drank about one-half of the bottle of wine and became drowsy and light-headed. She told defendant she did not want any more; however, he told her to go ahead and drink it all and kept trying to get her to keep drinking. Crystal leaned back, "drifted off" and awoke when defendant began pulling on her clothes. He had his pants down and was saying, "Just give me five minutes." Although Crystal did not want to have sex with defendant, he forced her to engage in sexual intercourse. Crystal reported the incident to her cousin and then to the police. However, she and her mother decided going through a trial would be too stressful, so they declined to pursue the matter.

Defendant testified, admitting having been convicted of robbery in 1994. Defendant claimed he hardly knew Crystal and denied ever buying her liquor or having sexual intercourse with her, let alone raping her.

As to the incident with LeeAnn, defendant admitted he stopped his car near her, but did so because he thought she was someone else. He did not drive off because she seemed depressed. She got into his car because she needed someone to talk with. LeeAnn told him she drank and he drove to the liquor store where he purchased vodka for her and beer for himself. LeeAnn suggested they go to her home and defendant agreed, thinking they were going there to drink. Inside LeeAnn's apartment they talked and drank. They later went back to the liquor store because LeeAnn insisted on having more alcohol.

After buying more vodka, they returned to LeeAnn's apartment and again talked. LeeAnn told him she wanted to show him something in the bedroom, so they entered and sat on the bed and talked. They began kissing and eventually had sexual intercourse. Defendant denied intending to have sex with LeeAnn either when he picked her up or when he went to her apartment.

DISCUSSION

I

■ Defendant claims the trial court erred in finding his prior juvenile adjudication for committing battery with serious bodily injury (§ 243, subd. (d))[1] constituted a strike. Relying on *People v. Griggs* (1997) 59 Cal.App.4th 557 [69 Cal.Rptr.2d 174], as well as other arguments, the People contend to the contrary. Defendant has the better position.

Section 667(d)(3) provides in relevant part: "A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if: [¶] . . . [¶] (B) the prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code or described in paragraph (1) or (2) as a felony. [¶] . . . [¶] (D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." Section 667(d)(1) refers to violent felonies listed in section 667.5, subdivision (c) and serious felonies listed in section 1192.7, subdivision (c); section 667(d)(2) refers to offenses committed in other jurisdictions.

In *Griggs*, the defendant had a prior juvenile adjudication for residential burglary. Although residential burglary was not a listed offense under Welfare and Institutions Code section 707, subdivision (b), it was listed as a serious felony under section 1192.7, subdivision (c)(18). Thus, while residential burglary came within section 667(d)(3)(B) by virtue of that section's incorporation of section 1192.7, subdivision (c), it did not come within section 667(d)(3)(D). *Griggs* concluded the Legislature's failure to include residential burglary in section 667(d)(3)(D) could only be attributable to a "drafting oversight." (*People v. Griggs, supra,* 59 Cal.App.4th at pp. 559-561.)

The People claim *Griggs* was correctly decided "and should be followed by this Court." Apparently, by following *Griggs* the People mean we should view the Legislature's failure to include section 243(d) in 667(d)(3)(D) as a drafting oversight.

Following the filing of the briefs in this case, the California Supreme Court filed its opinion in *People v. Garcia* (1999) 21 Cal.4th 1 [87 Cal.Rptr.2d 114, 980 P.2d 829], wherein it interpreted section 667(d)(3)(B) and (d)(3)(D). The court stated: "To summarize, we interpret section 667,

---

[1]Hereafter, subdivisions to Penal Code sections 243 and 667 will be placed in parentheses immediately following the designated section.

subdivision (d)(3) according to its terms, without adopting any of the rewritings proposed by the parties and lower courts. Under paragraph (B), a prior juvenile adjudication qualifies as a prior felony conviction for Three Strikes purposes only if the prior offense is listed in Welfare and Institutions Code section 707(b) or is classified as 'serious' or 'violent.' Paragraph (D) does not modify or conflict with paragraph (B), but states a separate, additional requirement: the prior adjudication qualifies as a prior felony conviction only if the defendant, in the prior juvenile proceeding, was adjudged a ward because of at least one offense listed in section 707(b)." (*People v. Garcia, supra,* 21 Cal.4th at p. 13.) The court went on to state, "*People v. Griggs, supra,* 59 Cal.App.4th 557, which adopted a construction of section 667, subdivision (d)(3) inconsistent without ours, is disapproved." (*Ibid.*)

In light of Garcia's express disapproval of *Griggs*'s construction of section 667(d)(3)(D), we reject the People's suggestion that we apply the reasoning of *Griggs* to section 243(d). (*People v. Garcia, supra,* 21 Cal.4th at p. 13.)

The People also argue that based on the record underlying the section 243(d) finding, the court properly found that the section 243(d) offense came within the catch-all provision of Welfare and Institutions Code section 707, subdivision (b)(14), "Assault by any means of force likely to produce great bodily injury." We disagree.

In finding the section 243(d) offense constituted a strike, the trial court identified the evidence it was relying upon: "the charging document, minutes of the jurisdictional hearing, the defendant's statement contained in the report of the probation officer, and the minutes re findings and orders re disposition."

The "charging document" (petition) charged defendant in count I with an attempted robbery of Kathy S. on November 14, 1992. A great bodily injury allegation (§ 12022.7) was appended thereto. Count II charged defendant with committing battery with serious bodily injury on Kathy S. on November 14, 1992.

The court minutes of the jurisdictional hearing show that defendant admitted count II, with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], and that count I was dismissed.

The "minutes" regarding the "findings and orders re disposition" show the defendant was committed to the California Youth Authority, with the commitment "suspended" and defendant placed on probation.

The "defendant's statement" contained in the probation officer's report was a complete denial of any involvement in the offense.[2]

Based on the foregoing, the court reasoned: "Of significance is the following: The charging document and I quote in part, 'Said minor did willfully and unlawfully use force or violence upon the person of [K]athy S. thereby inflicting serious bodily injury.' [¶] Secondly, from the jurisdictional hearing, the defendant waived his right to a contested hearing and admitted the allegation and stipulated there was a factual basis for the plea. [¶] Third, the defendant in his statement to the probation officer gives an account, if it were true, that would not constitute a crime of any nature. He states that someone else unnamed was with him and that he, the defendant, did not hit the victim but he does not say the other individual did hit the victim. [¶] Based on a portion of the file the Court reviewed under judicial notice there is no indication of anyone other than [the defendant] being charged with that crime. [¶] Fourthly, the findings and orders of disposition clearly show a conviction of 243(d). The only conclusion the Court can arrive at is that the defendant, in committing the violation of Penal Code Section 243(d), personally inflicted serious bodily injury. The law says 'serious bodily injury' and 'great bodily injury' are interchangeable terms."

We agree with the People that the court could properly look to the record behind the section 243(d) finding to determine whether defendant's conduct constituted "[a]ssault by any means of force likely to produce great bodily injury." (Welf. & Inst. Code, § 707, subd. (b)(14); see *People v. Reed* (1996) 13 Cal.4th 217, 226 [52 Cal.Rptr.2d 106, 914 P.2d 184] [court may look to preliminary hearing transcript to determine whether prior conviction for violation of § 245, subd. (a) was felony in which defendant personally used a dangerous or deadly weapon]; *People v. Guerrero* (1988) 44 Cal.3d 343, 345, 355 [243 Cal.Rptr. 688, 748 P.2d 1150] [court may look to the entire record of prior conviction for burglary to determine if conviction was for burglary of a residence].)

Additionally, although the court did not expressly state it was finding that the conduct underlying the section 243(d) offense came within Welfare and

---

[2]In toto, defendant's statement was: "The minor states he was coming home from his girlfriend's house and on his way home he pulled into the gas station to get gas. The location was in the 'oildale' part of Bakersfield. The minor states that this is an area that does not like Blacks. He states he was driving the car and there was another person there. He states he went in the store to pay for the gas and that the victim was in the store paying for her gas. He states he did not follow her out of the store and that he went to pump gas. He states the next thing he knew the lady was yelling and ran into the store. He states the clerk then came out saying she was going to call the police at which time he left. The minor states there was another individual in the car and that he did not hit the victim."

Institutions Code section 707, subdivision (b)(14), i.e., "[a]ssault by any means of force likely to produce great bodily injury," the court's observance that "great bodily injury" and "serious bodily injury are interchangeable terms" clearly implies such a finding.[3]

However, contrary to the court's conclusion and the People's contention, the evidence does not support a finding that the section 243(d) offense came within Welfare and Institutions Code section 707, subdivision (b)(14). To come within subdivision (b)(14) it is not enough to show that great bodily injury resulted; it must also be shown that the means employed in causing the injury was "likely" to do so. (See, e.g., *In re Gavin T.* (1998) 66 Cal.App.4th 238, 241 [77 Cal.Rptr.2d 701] ["A recklessly discarded apple is not 'any means of force likely to produce great bodily injury . . .' "]; *People v. Pullins* (1950) 95 Cal.App.2d 902, 904 [214 P.2d 436] [gravamen of "[a]ssault by any means of force likely to produce great bodily injury" (Welf. & Inst. Code, § 707, subd. (b)(14)) "is the likelihood that great bodily injury will result from the force applied [citation], not that an injury actually resulted].") For example, a defendant who simply pushes another, thereby causing the latter to fall and suffer great bodily injury, does not come within Welfare and Institutions Code section 707, subdivision (b)(14) if the means employed, i.e., the nature of the push, was not "likely" to result in great bodily injury. Therefore, while defendant's admission of the section 243(d) offense established that he, either personally or vicariously, caused serious or great bodily injury to Kathy S., nothing in the evidence shows that the means employed was "likely" to have caused that injury. Indeed, the record is silent on this point. This failure of proof precludes any finding that the section 243(d) offense comes within Welfare and Institutions Code section 707, subdivision (b)(14). In sum, the evidence fails to show that the section 243(d) offense was a strike.

## II, III*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## DISPOSITION

The finding that defendant's prior juvenile adjudication for battery with serious bodily injury (§ 243(d)) constitutes a strike is reversed, and the

---

[3]Serious bodily injury and great bodily injury are essentially equivalent terms. (*People v. Burroughs* (1984) 35 Cal.3d 824, 831 [201 Cal.Rptr. 319, 678 P.2d 894].)

*See footnote, *ante*, page 61.

sentence imposed is vacated. In all other respects, the conviction and the special findings are affirmed. The matter is remanded to the superior court for resentencing.

Scotland, P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 25, 2000.