Filed 3/9/16  P. v. Compton CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B258536 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA062603) |
| v. | |
| WALTER COMPTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Murphy, Judge.  Affirmed.

Joshua H. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Walter Compton appeals his robbery conviction (Pen. Code,[1] § 211) and the sufficiency of the evidence to support the trial court's findings concerning his prior federal convictions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Compton was charged with second degree robbery of bank teller Sharon Iaeger. It was also alleged that he had suffered multiple prior convictions of serious and/or violent felonies for the purposes of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)); section 1170, subdivision (h)(3); and section 667, subdivision (a)(1).

At trial, Sharon Iaeger testified that on March 12, 2014, while she was working as a bank teller at Union Bank in Lancaster, she greeted a man who entered the bank wearing sunglasses, a khaki shirt, and khaki pants. The man, who had a distinctive walk with a lot of shoulder and hip movement, told her that he was there to make a withdrawal; she told him to come to her teller window. Iaeger noticed "the way he was dressed, the way he was walking, that something wasn't right." When he got to Iaeger's window, the man covered his mouth with a handkerchief and said, "This is a robbery." He told Iaeger, "Give me hundreds, fifties[,] and everything in your top drawer."

Iaeger pushed the silent alarm button and emptied the top drawer. Iaeger saw that she did not have hundreds or fifties in her drawer, so she showed the man the drawer and said, "You know, I'm sorry. This is all I have." The man told her to give him the money, took it from her, and left the bank. The funds taken from Iaeger's drawer totaled $551.

Jennifer Bate, a secretary for the gang unit of the Los Angeles Sheriff's Department, testified that approximately one hour before the robbery she was near the Union Bank at a Wells Fargo automated teller machine. While at the Wells Fargo, Bate had locked herself out of her vehicle and waited for assistance. As she stood by her truck waiting, she noticed a man walking toward her. The man caught Bate's attention because he looked unusual: he wore a long-sleeved khaki shirt buttoned all the way to the top and buttoned at the wrist, and khaki pants. The man stopped and spoke to Bate for a moment,

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

telling her that she was "looking fine." Bate looked at the man's face and thanked him. She noticed the man's "strut," which she described as "a certain type of stroll, a step and a pause in his gait and then a dip as he walked along." It was a dip in his shoulder, which Bate demonstrated by lowering her shoulder from side to side. Later that day, at work, Bate heard a radio broadcast on the sheriff's radio stating that there had been a robbery at the Union Bank and describing the suspect. Bate recognized that the description of the suspect matched the man she had spoken with at the Wells Fargo earlier in the day.

Bate spoke with Detective Michael Staley, the officer assigned to investigate the robbery, to report that she had spoken to someone who matched the suspect's description. Staley showed her a surveillance photo of the robber at the teller window, but with his face obscured by a piece of paper, and Bate identified the person in the photo as wearing the same clothing as the man she had spoken with at the Wells Fargo. Staley and an agent from the Federal Bureau of Investigation also shared the surveillance photograph of the robber with other law enforcement agencies. Another federal agent recognized the man in the photo as Compton from a previous bank robbery, and this ultimately led to Compton's arrest.

Prior to Compton's arrest, Staley had the opportunity to watch him walk. Staley testified that "[h]e had a very unique, overexaggerated[,] what we used to call the Crip walk. A free swinging arm. I don't know how—other than like a runway model, one foot in front of the other, kind of gangster walk." When Compton was arrested, he was wearing sunglasses. A search of his home led to the discovery of a pair of long khaki pants. Bate and Iaeger identified the sunglasses and pants as being like the ones the man wore on the day of the robbery.

Also, upon Compton's arrest, Staley photographed Compton's hand. The robber's hand had been visible in the surveillance video of the robbery. Staley observed that the robber had "very unique hands, in that they are kind of small, with slender fingers." He testified that the robber's unique looking hand, which had a lump on his little finger, matched Compton's hand.

Staley conducted photographic and live lineups for Bate and Iaeger. When shown a photographic lineup including Compton, Iaeger circled two photographs—one of Compton and one of another man—because their eyes were shaped like the robber's eyes, which she had seen through the robber's sunglasses. Bate selected a photograph of Compton from a photographic array as the man she had spoken with outside the Wells Fargo on the day of the robbery.

At the live lineup several weeks later, Iaeger identified someone other than Compton as the person who looked closest to what the robber had looked like. She later testified that she had instantly eliminated Compton at the live lineup because his appearance was so different than it had been the day of the robbery, and she did not believe that someone could have lost that much weight and changed his appearance so drastically in that short a time. Compton's appearance changed significantly after his arrest. At the time of his arrest, Compton was clean shaven and had a shaved head. By the time of the live lineup, Compton had grown a white, full beard. His hair was significantly longer, and it was white. He looked much older. Compton also did not walk in his distinctive manner at the live lineup.

A few days after the live lineup, Iaeger testified at Compton's preliminary hearing. She identified Compton as the robber, but on cross-examination stated that she could not definitively state that he was the person who had robbed her.

At trial, Iaeger identified Compton as the man who had robbed her. She testified that Compton had changed his appearance since the robbery. He had grown a full beard and had gray hair and sideburns. He had also gained weight since the lineup. Also at trial, Bate testified that the man she saw at the Wells Fargo was the man shown in the surveillance video still photograph, and she identified Compton as that man.

Compton was convicted of second degree robbery. In a court trial concerning prior convictions, the trial court concluded that Compton had suffered three prior federal bank robbery convictions, and that these prior convictions constituted serious or violent felonies under California law. The court sentenced Compton to 25 years to life in state

4

prison under the Three Strikes law and imposed three five-year enhancements under section 667, subdivision (a)(1).  Compton appeals.

## DISCUSSION

### I.       Admission of Evidence of Prior Bank Robbery

"Subdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of [Evidence Code] section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*), fn. omitted.)  "Evidence of uncharged crimes is admissible to prove identity, common plan, and intent 'only if the charged and uncharged crimes are sufficiently similar to support a rational inference' on these issues.  [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 711 (*Edwards*).) "The 'highest degree of similarity is required to prove identity.'  [Citation.]" (*Ibid*.) Lesser degrees of similarity are required for evidence of prior uncharged acts to be admissible to prove intent or a common design or plan. (*Ewoldt*, *supra*, 7 Cal.4th at pp. 402-403.)

Here, the trial court admitted evidence, pursuant to Evidence Code section 1101, subdivision (b), of a 1998 bank robbery Compton had committed.  The court explained, "[B]oth robberies are at [a] bank, as opposed to one robbery at a bank and [a] previous robbery at a market.  Both robberies involve going to the teller, as opposed to [one] going to a teller and another going to a bank manager.  The initial contact is fairly [innocuous]. One case, I want to cash a hundred and then he announces, this is a robbery.  In the second instance, I want to withdraw money.  Nothing there to startle the teller until he then announces, as he did the first time, this is a robbery.  [¶]  He asked for specific denominations in this one instance, fifties and hundreds.  He leaves.  The other, he asks for twenties.  He leaves.  He operates alone.  There were no facial disguises like hoodies

or anything else, except for, in one instance, there are dark glasses. [¶] And it's unclear whether he, actually, handed a teller a note. According to the deputy district attorney, Mr. Lee, all of the instructions or demands were verbal. [¶] And so it seems to me that these common marks support a strong inference that the current crime bears a signature. So I'm going to admit the [evidence under Evidence Code section] 1101[, subdivision] (b)."

The victim of the 1998 bank robbery, Michael Contratto, then testified that on April 16, 1998, Compton approached his teller window at the Fidelity Federal Bank and asked for change for a $100 bill. Contratto told Compton that it was against bank policy to change bills for those who were not customers of the bank, but that he would accommodate him on this occasion. Compton then leaned over and said that he was robbing Contralto and that he had a gun. Contratto opened his drawer, and Compton instructed him to hand over all the $20 bills. Contralto gave Compton the money, and Compton walked out of the bank.

Compton argues that the evidence was improperly admitted under Evidence Code section 1101, and also asserts that the error denied him the right to due process under the United States Constitution. "We review the trial court's determination for abuse of discretion, and view the evidence in the light most favorable to the trial court's ruling. [Citation.]" (*Edwards*, *supra*, 57 Cal.4th at p. 711.)

Although the Attorney General defends the admission of this evidence as tending to prove not only identity but also a common scheme or plan and to show intent, under the facts of this case, the evidence of the prior bank robbery could only properly have been admitted if it was relevant to prove identity. "Evidence of *identity* is admissible where it is conceded or assumed that the charged offense was committed by someone, in order to prove that the defendant was the perpetrator." (*Ewoldt*, *supra*, 7 Cal.4th at p. 394, fn. 2.) "Evidence of a common design or plan . . . is not used to prove identity but rather to prove that the defendant engaged in the conduct alleged to constitute the charged offense." (*Id*. at p. 394.) It is used to establish "that the defendant committed the *act* alleged" where "'the act is still undetermined.' [Citation.]" (*Id*. at p. 394, fn. 2.)

6

Evidence of intent is admissible "to prove that if the defendant committed the alleged act, he or she did so with the intent that comprises an element of the charged offense. 'In proving intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it.' [Citation.]" (*Ibid.*) There was no question whether a robbery had been committed or what intent Compton harbored during his interaction with the bank teller, such that evidence of a common design or plan or evidence of intent would have been properly admitted. Instead, the question at trial was whether Compton was the person who robbed the Union Bank, and the evidence of the prior robbery was admitted in order to prove that Compton was the perpetrator here.

"'"'For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.'"' [Citation.] 'The strength of the inference in any case depends upon two factors: (1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks.' [Citation.] 'The inference of identity, however, "need not depend on one or more unique or nearly unique common features; features of substantial but lesser distinctiveness may yield a distinctive combination when considered together."' [Citation.]" (*Edwards*, *supra*, 57 Cal.4th at p. 711.)

Whether these two garden-variety bank robberies share common features that are sufficiently distinctive to support the inference that the same person committed both acts need not be resolved. Even if the trial court erred in concluding that the acts were sufficiently similar to permit the admission of the evidence of the 1998 bank robbery, the error was harmless. It is not reasonably probable that Compton would have obtained a more favorable result if the trial court had excluded the evidence of the 1998 bank robbery. (See *People v. Thomas* (2011) 52 Cal.4th 336, 356, fn. 20.) The other evidence of Compton's guilt was overwhelming. He was captured by surveillance cameras committing the robbery, and that video was played at trial. Although her ability to identify Compton varied as his appearance changed, Iaeger identified Compton at trial as

7

the person who had robbed her.  Bate, moreover, consistently identified Compton as the person she saw near the bank shortly before the robbery and as the person shown in the surveillance video of the robbery.  Both Iaeger and Bate recalled Compton's distinctive clothing and walk.

With respect to Compton's contention on appeal that the admission of this evidence violated his federal due process rights, the erroneous admission of evidence under state law results in a due process violation only if it renders the trial fundamentally unfair.  (*People v. Partida* (2005) 37 Cal.4th 428, 439.)  Compton presented no argument to support his brief contention in a footnote that the trial was fundamentally unfair, and in our review of the record we identify no fundamental unfairness in the trial resulting from the admission of this limited testimony about a prior offense.

## II.    Prior Conviction Allegations

Compton contends the trial court erred in finding his prior federal convictions for bank robbery in violation of title 18 of United States Code section 2113(a) qualified as serious felonies for purposes of the Three Strikes law and sentence enhancements under section 667, subdivision (a)(1).  He argues that title 18 of United States Code section 2113(a) can be violated in a manner that would not qualify the crimes as serious felonies under California law, and there was no evidence as to the manner in which he had violated the federal statute.  We disagree.

Upon a claim of insufficient evidence to support an enhancement, the appellate court examines "the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence.  In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*People v. Miles* (2008) 43 Cal.4th 1074, 1083 (*Miles*).)  Where the fact of conviction pursuant to a specific statute is inadequate to prove qualification as a serious felony, the court may look to the record of conviction in the prior proceeding.  (*Id*. at p. 1082.)  Certified

8

records from the Federal Bureau of Prisons constitute admissible evidence to prove a strike allegation. (§ 969b.)

For the purposes of the Three Strikes law and the section 667, subdivision (a)(1) enhancement, serious felonies are listed in section 1192.7, subdivision (c). (§ 667, subds. (a)(4) & (d)(1).) "Bank robbery," identified by section 1192.7, subdivision (c)(19) as a serious felony, is defined in subdivision (d) of section 1192.7 as "to take or attempt to take, by force or violence, or by intimidation from the person or presence of another any property or money or other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association."

Although the statute has been amended numerous times, at all times relevant to this case the federal bank robbery law, title 18 of United States Code section 2113(a), has identified two distinct offenses. The first paragraph of title 18 of United States Code section 2113(a) describes the offense of bank robbery, which qualifies as a serious felony. A violation of the second paragraph, which sets forth the offense of bank burglary, does not. (*Miles*, *supra*, 43 Cal.4th at pp. 1077, 1082-1083.) *Miles* is instructive. In that case, to prove that a prior conviction for violation of title 18 of United States Code section 2113(a) qualified as a strike, the People introduced the form "Judgment and Probation/Commitment Order," signed by the federal judge. The form recited that the defendant pled guilty to a "violation of 18 U.S.C. 2113(a)(d)(e), armed bank robbery and . . . kidnapping, as charged in the First Count of the Indictment. . . ." (*Miles*, at p. 1079.) The defendant challenged the sufficiency of the evidence that the federal conviction qualified as a strike. (*Id*. at p. 1078.) Our Supreme Court affirmed, reasoning that "the trier of fact may draw *reasonable inferences* from the record presented. Absent rebuttal evidence, the trier of fact may presume that an official government document, prepared contemporaneously as part of the judgment record and describing the prior conviction, is truthful and accurate. Unless rebutted, such a document, standing alone, is sufficient evidence of the facts it recites about the nature and circumstances of the prior conviction." (*Id*. at p. 1083.) "Where, as here, the statutory

9

provision includes more than one form of offense, one may reasonably infer, absent contrary indicia, that the additional prose [in the judgment] is not mere surplusage, but an attempt to delineate which form was violated." (*Id*. at p. 1085.) Moreover, the court explained, the term "robbery" in both legal and common parlance corresponded only to the first paragraph of title 18 United States Code section 2113(a), and not to the second paragraph, which described the crime commonly known as "burglary." (*Id*. at pp. 1085-1087.) The court in *Miles* found this to be "a strong background for concluding that [the federal judge's] notation describing the offense committed under [title 18 United States Code] section 2113(a) as "bank robbery" most likely [citation] refers to the forcible taking of the offense. . . ." (*Id*. at p. 1087.) Providing further support to this conclusion was the fact that the judgment form stated that the conviction was also for "armed robbery" and "kidnapping." (*Id*. at p. 1088.)

Here, to prove Compton's two 1985 bank robbery convictions, the People introduced the "Judgment and Probation/Commitment Order" in Case No. CR85-829(B)-WMB, signed by the federal judge, which showed that Compton was convicted, among other offenses, of "robbery of a bank in violation of 18 USC 2113(a) as charged in counts 2 and 3." To prove his 1999 bank robbery conviction, the People introduced the "Judgment And Probation/Commitment Order" in Case No. CR98-111-RJK. That document stated Compton was convicted of "Bank Robbery in violation of Title 18 United States Code 2113(a) as charged in the Single Count Indictment."[2]

Under the reasoning of *Miles*, *supra*, 43 Cal.4th 1074, we find the notations "robbery of a bank" and "Bank Robbery" on the judgment forms, in the absence of any rebuttal evidence, constitute substantial evidence that the convictions in Case Nos. CR85-

---

[2] This bank robbery is the same robbery discussed earlier in our opinion, and Contratto, the victim in that case, testified at trial. The trial court, however, was not permitted to consider Contratto's testimony in determining whether the prior conviction qualified as a serious felony. (*People v. Reed* (1996) 13 Cal.4th 217, 226.) Although the prosecutor did mention Contratto's testimony at the priors proceeding, he did so only after the court had stated its ruling and described its reasoning; and the ruling and reasoning did not reflect any reliance on Contratto's testimony.

829(B)-WMB and CR98-111-RJK qualified as serious felonies under California law for purposes of the Three Strikes law and the sentence enhancement in section 667, subd. (a)(1).

## III.     Abstract of Judgment

In the course of our review of this matter, we observed that the abstract of judgment describes the five-year sentence enhancements that were imposed under section 667, subdivision (a)(1) as being imposed under section "667.5(a)(1)."  We may correct this clerical error on appeal.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 187.)

### DISPOSITION

The judgment is affirmed.  The superior court is ordered to prepare an amended abstract of judgment listing the three five-year sentence enhancements as being imposed under Penal Code section 667, subdivision (a)(1) and to forward a copy to the Department of Corrections and Rehabilitation.


ZELON, Acting P. J.


We concur:



SEGAL, J.



BLUMENFELD, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.