Filed 9/15/20  P. v. Dixon CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B299415 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA073169) |
| v. | |
| MARKEISHA NICOLE DIXON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  David C. Brougham, Judge.  Affirmed.

J. Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Markeisha Nicole Dixon appeals from the denial of her petition for resentencing pursuant to Penal Code section 1170.95.

Defendant was one of three individuals charged with the first degree murder of a college student kidnapped, robbed and left for dead in the mountains after her throat was slit. Defendant pled guilty to first degree murder in exchange for the dismissal of the robbery-murder and kidnapping-murder special circumstance allegations. The record of conviction demonstrates defendant was a major participant who acted with reckless indifference to human life. Defendant is ineligible for resentencing relief under the changes in the law regarding liability for felony murder since her 2007 conviction.

Defendant raises numerous contentions challenging the order denying her petition, all of which were forfeited by her failure to object in the trial court at the evidentiary hearing. We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2006, defendant was charged, along with codefendant Henry Arnold Singer, with one count of first degree murder. (Pen. Code, § 187, subd. (a).) Robbery-murder and kidnapping-murder special circumstances were also alleged. (§ 190.2, subd. (a)(17).) The charges arose from the August 2001 murder of Christina Burmeister. In a separate information, James Dixon was also charged with the Burmeister murder.[1] Neither Henry Arnold Singer or James Dixon is a party to this appeal.

---

[1]     Because of the common surname, we will refer to James Dixon as Dixon and Markeisha Dixon as defendant.

Two witnesses testified at the preliminary hearing, Sergeant Joseph Purcell of the Los Angeles County Sheriff's Department and Chanson Tyrone. Sergeant Purcell investigated the death of Ms. Burmeister. Mr. Tyrone was a witness to the crimes.

On August 18, 2001, a deputy sheriff discovered Ms. Burmeister's body in the front passenger seat of her truck on a gravel turnout on Highway 39 in Azusa Canyon. Her throat was cut and blood smears in the truck indicated she was killed in that location. A later autopsy determined the cause of death to be a knife wound to the throat, causing the victim to have "drowned on her own blood."

Sergeant Purcell recovered a cigar butt on the floorboard beneath the driver's seat of the victim's truck. Later testing established that DNA taken from the cigar butt matched the DNA profile for Dixon. The investigation also revealed that three ATM withdrawals, totaling $400, were made from Ms. Burmeister's account at Washington Mutual bank within the span of 90 seconds on the evening of August 17, 2001. Security footage from the bank showed a person making the withdrawals holding the hood of their sweatshirt down to obscure their face. Ms. Burmeister's family told Sergeant Purcell that she had gone out that night in her new truck to a fraternity party at her college.

Mr. Tyrone testified he was with Singer on the night of August 17, 2001. They were in San Bernardino walking down the street headed to a liquor store when Dixon and defendant pulled up alongside them in a sedan. Defendant, who was driving, called over to them and asked if they wanted to go get some "cheese," a slang term for money. Defendant lived in the

3

same building as Mr. Tyrone.  He had seen Dixon before with defendant at the building and Mr. Tyrone said "[h]e looked crazy."  Both Singer and Mr. Tyrone got into the sedan with defendant and Dixon.  They pulled onto the freeway and headed toward Pomona.

Defendant stopped the car on a residential street where some sort of party was going on.  Mr. Tyrone noticed Dixon had a handgun in his lap.  Defendant and Dixon got out of the car and walked off.  Mr. Tyrone and Singer stayed by the car, talking and smoking cigarettes.

After a few minutes, Dixon returned walking next to a white female unknown to Mr. Tyrone (Ms. Burmeister) who was holding her hands up.  Dixon appeared to whisper something in her ear and she put her hands down.  They walked toward a blue truck, parked a couple of spaces away from the sedan, and both Dixon and Ms. Burmeister got in the passenger side of the truck.  Defendant said "come on" and then got in the driver's seat of the truck and drove off.

Singer and Mr. Tyrone got into the sedan, with Singer driving, and followed the truck.  They eventually arrived at a Washington Mutual bank in Montclair.  Singer parked the sedan a short distance away from where defendant had parked the truck.  Defendant, who was wearing a black hooded shirt, got out of the truck and walked toward the ATM machine.  She never said what she was going to do, but it was "pretty easy to figure out."  When she was walking back from the ATM, she had money in her hands and was counting it.

Defendant walked over to Singer and Mr. Tyrone and told them she was having difficulty driving the truck because it was a manual transmission.  Singer, who knew how to drive a manual

transmission, got into the truck and drove out of the parking lot, as did defendant and Mr. Tyrone in the sedan.

They drove to "a secluded little dark area" up in the mountains. Defendant parked the sedan a little bit away from where Singer parked the truck. Singer got out of the truck, walked over to the sedan and got in with defendant and Mr. Tyrone. Mr. Tyrone could see that Dixon was still in the truck with Ms. Burmeister. After a few moments, he saw Ms. Burmeister appear to grab at her neck "like she was gasping for air or something." Dixon got out of the truck and came back to the sedan. Mr. Tyrone did not see any weapon in his hands. Defendant then drove them all back to San Bernardino. She and Dixon dropped off Singer and Mr. Tyrone at Mr. Tyrone's apartment.

In November 2007, defendant pled guilty to first degree murder. As part of the plea agreement, defendant admitted certain facts on the record, including that she was present when Ms. Burmeister was abducted in Pomona; she saw Dixon force Ms. Burmeister into her truck at gunpoint; she then got into the truck and drove it to a Washington Mutual bank in Montclair; Dixon gave her the victim's ATM card and pin number and she withdrew money from the account; she followed the truck in another car up to the mountains to a dark turnout area; she saw Dixon approach Ms. Burmeister with a knife; she saw Dixon throw the knife over a fence; Dixon returned to where she and the two other accomplices were, with Ms. Burmeister's panties in his hand; and Dixon told defendant "everything was taken care of."

The court accepted defendant's waivers on the record. In accordance with the terms of the plea agreement, defendant was sentenced to prison for 25 years to life and the prosecution

dismissed the special circumstance allegations. Defendant was awarded 708 days of custody credits.

In January 2019, defendant filed a petition for resentencing pursuant to Penal Code section 1170.95 which became effective January 1, 2019. The trial court appointed defendant counsel and the parties submitted briefs. The court ordered the People to show cause in accordance with section 1170.95, subdivision (c).

At the evidentiary hearing on May 29, 2019, the court identified the relevant evidence as the record of conviction, including the transcript of the preliminary hearing. The parties agreed and did not offer any additional evidence, nor did any party raise any objections.

After entertaining argument from the parties, the court denied defendant's petition, finding the prosecution met its burden of proving beyond a reasonable doubt that defendant acted as an aider and abettor with the intent to kill and also as a major participant in the underlying felonies who acted with reckless indifference. The court found that defendant was therefore ineligible for resentencing.

This appeal followed.

## DISCUSSION

Defendant contends the trial court erroneously relied on the transcript of the preliminary hearing which she contends is not part of the record of conviction and is insufficient to establish guilt, and further because the transcript consisted of uncorroborated accomplice testimony. Defendant also argues her counsel was ineffective for failing to object to the court's reliance on the preliminary hearing transcript.

Defendant concedes she did not object to the court considering the preliminary hearing transcript as the relevant

6

evidence to resolve her petition.  Defendant's appellate contentions have therefore been forfeited.  " ' "An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method." ' " (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590.)  The doctrine of waiver or forfeiture is intended " ' "to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had." ' " (*Id.* at p. 590.)  " ' "No procedural principle is more familiar . . . than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." [Citation.]' " (*Ibid.*)

Defendant nonetheless urges us to resolve her contentions on the merits because she views them as issues of first impression that involve important questions of public policy and affect the validity of her judgment of conviction.  Even were we to consider the substance of defendant's contentions, we would reject them.

The preliminary hearing transcript is a part of the record of conviction.  (*People v. Reed* (1996) 13 Cal.4th 217, 223.)  As the Supreme Court explained, a preliminary hearing transcript is properly considered a part of the record of conviction because of "the procedural protections afforded the defendant. . . .  Those protections include the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings." (*Ibid.*)  Where, as here,

7

the conviction is based on a guilty plea, a preliminary hearing transcript is a reliable record reflecting the facts of the offense for which the defendant was convicted.

Defendant asserts a preliminary hearing only establishes sufficient cause to hold the defendant to answer and does not establish guilt. The contention lacks merit. A court reviewing a preliminary hearing transcript in a resentencing proceeding does *not* look to the legal conclusion reached by the magistrate at the hearing, but to the facts established by the testimony, and then draws its own legal conclusions about those facts to decide if a defendant is eligible for resentencing.

As for the argument the preliminary hearing consisted only of uncorroborated accomplice testimony, defendant has not provided authority or argument to persuade us that Penal Code section 1111 applies to a postconviction resentencing proceeding pursuant to section 1170.95. In any event, the testimony of Mr. Tyrone was not uncorroborated.

The preliminary hearing consisted of the testimony of Sergeant Purcell as well as Mr. Tyrone. Their testimony was corroborated by defendant's numerous factual admissions made during her plea colloquy. The trial court did not have only uncorroborated accomplice testimony upon which to base its conclusion that defendant was a "major participant in the underlying felony and acted with reckless indifference to human life." (Pen. Code, § 189, subd. (e).)

We also reject defendant's contention her counsel was ineffective for failing to object to the court's consideration of the preliminary hearing transcript at the evidentiary hearing. Defendant has not shown there was any valid basis for an objection. Defendant's argument that counsel purportedly

8

admitted the testimony was unreliable because it was "not under oath" misconstrues counsel's remarks. The comment by counsel about statements not being under oath was not directed at the witness testimony during the preliminary hearing, which plainly was under oath, but at the additional argument counsel made regarding his discussions with his client about her reasons for pleading guilty.

## DISPOSITION

The trial court's order denying Markeisha Nicole Dixon's petition for resentencing is affirmed.


GRIMES, Acting P. J.


WE CONCUR:


STRATTON, J.


WILEY, J.

9