Filed 2/3/21  P. v. Zapata CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B304278 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA024428) |
| v. | |
| MIGUEL ANGEL ZAPATA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Leslie E. Brown, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

In 1997, defendant Miguel Angel Zapata entered a plea of no contest to one count of second degree murder. In 2019, he petitioned for resentencing pursuant to Penal Code[1] section 1170.95. He appeals the order of the trial court summarily denying his petition.

The record of conviction does not contain evidence demonstrating the factual basis for Zapata's no contest plea. As a result, the People assert the trial court exceeded the scope of review under section 1170.95 by making factual findings about Zapata's conviction without conducting an evidentiary hearing. We agree and reverse with instructions for the trial court to issue an order to show cause and conduct a hearing pursuant to section 1170.95, subdivision (d).

## BACKGROUND

### A.   Evidence Presented at the Preliminary Hearing[2]

On the evening of January 21, 1996, Jesse Reyes and several friends attended a party near Venice High School. While at the party, a man wearing a brown bandana "mad dogged" Reyes. Reyes left the party in a Cadillac, followed by a second group of friends in an Infiniti driven by his friend William Cabrera.

While driving, Reyes heard gunshots coming from the direction of a silver gray Thunderbird. The shots were fired in

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

[2] The facts set forth herein are distilled from the transcript of the preliminary hearing, and are presented solely to explain our decision. They do not represent factual findings for purposes of further proceedings.

the direction of Cabrera's Infiniti.  Reyes believed the shooter was the man who "mad dogged" him at the party.  Cabrera described hearing five shots fired from a silver or gray Thunderbird or Toyota Celica.

Law enforcement officers located Zapata's silver gray Thunderbird at his residence.  During a subsequent police interview, Anthony Sanchez admitted attending the party in Venice, leaving in Zapata's vehicle, and shooting at another vehicle in self defense.  Zapata joined the interview and admitted that he picked Sanchez up from the party.  Sanchez told him that they "were gonna go see who these guys were."  Zapata agreed to follow the men Sanchez had encountered at the party to confirm where they were from.  Someone in the vehicle they had been following fired at them, and Sanchez returned fire in self defense.

One of the passengers in Cabrera's Infiniti, Cesar Martin, died as a result of a bullet wound sustained in the shooting.  A second passenger, Eric Huizar, suffered serious injuries but recovered.

## B.    Zapata's Conviction for Second Degree Murder

Zapata and Sanchez were held to answer on multiple charges.  Zapata was arraigned on one count of murder and three counts of attempted murder.  The record does not contain the charging document, and the superior court clerk has certified that the felony information cannot be located.

Sanchez was tried by a jury for murder and convicted in early 1997.  We affirmed the conviction in an unpublished opinion.  (*People v. Sanchez* (Nov. 24, 1998, B111548).)

Zapata, on the other hand, pleaded no contest to second degree murder (§ 187, subd. (a)).  The trial court sentenced him to 15 years to life in state prison.

## C.    The Petition for Resentencing

On February 15, 2019, Zapata filed a petition for resentencing pursuant to section 1170.95.  The petition did not attach any documents from the underlying record of conviction.  In the response to the petition, the prosecution described the facts as derived from the pre-plea probation report, which it attached to its brief as an exhibit.  The prosecution also referenced the transcript of the preliminary hearing held jointly for Zapata and Sanchez, which included as an exhibit a transcript of the videotaped police interview of Sanchez and Zapata.

The trial court appointed counsel for Zapata.  During discussions about the procedural posture of the case, the trial court indicated that it had reviewed the pre-plea probation report, which set forth the facts of the case.  The court and counsel discussed the utility of reviewing portions of the transcript from Sanchez's trial, in which witnesses described the shooting.  The prosecutor agreed to obtain the trial transcript and provide it in a CD format to the court and defense counsel.

On January 10, 2020, the trial court conducted a hearing on the petition for resentencing.  During the hearing, counsel referenced the contents of both the preliminary hearing transcript and the Sanchez trial transcript.

The prosecutor acknowledged that it was not possible to discern if the charge against Zapata proceeded on a theory of felony murder or the natural and probable consequences doctrine.  Nonetheless, he argued the facts showed that Zapata was convicted under an aiding and abetting theory, based on his role as the driver who maneuvered the vehicle in close proximity to the victims to allow Sanchez to shoot at them.  Defense counsel responded that the preliminary hearing transcript made it

4

difficult to determine whether the prosecutor had been pursuing a direct aider and abettor theory or a natural and probable consequences theory. Based on the evidence of gang rivalry that occurred at the party, he argued the prosecutor could have pursued a theory of natural and probable consequences.

Following argument by counsel, the trial court stated only that the prosecutor had "pointed to evidence that supports the direct aider and abettor theory here." The trial court denied the petition without issuing an order to show cause or holding an evidentiary hearing, on the ground that Zapata had failed to establish a prima facie showing of entitlement to relief. Zapata timely appealed.

**D.     The Record on Appeal**

The record on appeal includes the following documents from the proceedings on the underlying second degree murder conviction: (1) a minute order documenting Zapata's arraignment on the felony information; (2) the preliminary hearing transcript, including the transcript of the videotaped interview of Sanchez and Zapata that was played during the hearing; and (3) the pre-plea probation report. We ordered the record augmented to include the following documents: (4) the minute order reflecting entry of Zapata's no contest plea on June 19, 1997; (5) the minute order from the sentencing hearing conducted on July 18, 1997; (6) the certified reporter's transcript of the sentencing hearing; and (7) the abstract of judgment. Upon review of additional records in the superior court's archives, court staff members were unable to locate a transcript of the plea colloquy or record of any plea agreement.

5

# DISCUSSION

## A.    Section 1170.95

Zapata alleges he was convicted under either the felony murder rule or the natural and probable consequences doctrine. He argues the trial court erred by denying his petition for resentencing without issuing an order to show cause or conducting an evidentiary hearing.  The People concur, acknowledging that while the record contains evidence that Zapata may have aided and abetted Sanchez in the killing, the record does not show that Zapata was ineligible for relief under section 1170.95 as a matter of law.  We agree.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), review granted Mar. 18, 2020, S260598.) Senate Bill No. 1437 accomplished this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability under subdivision (e).  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326 (*Verdugo*), review granted Mar. 18, 2020, S260493.)  Senate Bill No. 1437 also enacted section 1170.95, which provides a vehicle for petitioners convicted of murder pursuant to a now invalidated theory to petition to have the conviction vacated and to be resentenced.  (*Lewis*, *supra*, at p. 1135; see § 1170.95, subd. (a).)

In reviewing a petition under section 1170.95, the trial court engages in multiple levels of review. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975 (*Drayton*); *Verdugo*, *supra*, 44 Cal.App.5th at pp. 327-328; *Lewis*, s*upra*, 43 Cal.App.5th at pp. 1136-1138.) First, the trial court conducts an initial review to determine the facial sufficiency of the petition. (§ 1170.95, subd. (b); *Drayton*, *supra*, at p. 974; *Verdugo*, *supra*, at p. 328.) If the petition includes the required information, the trial court then reviews the petition to determine whether the petitioner has made a prima facie showing of eligibility for relief. (§ 1170.95, subd. (c); *Drayton*, *supra*, at p. 975-976; *Verdugo*, *supra*, at p. 327-328, 330; *Lewis*, *supra*, at p. 1138.) If so, the trial court must then appoint counsel and order briefing to assist the court in determining whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); *Verdugo*, *supra*, at p. 332; *Lewis*, *supra*, at p. 1140.)

In determining whether a petitioner has demonstrated the prima facie showings, the trial court may review the record of conviction. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138.) The record of conviction may include the complaint, the information or indictment, the verdict forms or the factual basis for a negotiated plea, the abstract of judgment, and any appellate decision on direct appeal. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330, 331-333; *Lewis*, *supra*, at p. 1138.)

At these initial stages, the trial court's role is to determine whether the petitioner is ineligible for relief as a matter of law, drawing all factual inferences in favor of the petitioner. (*Drayton*, *supra*, 47 Cal.App.5th at p. 980; *Verdugo*, s*upra*, 44 Cal.App.5th at p. 329.) It must not engage in factfinding or assess the credibility of the witnesses. (*Drayton*, *supra*, at

7

p. 980.)  The court "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Ibid.*)

If the petitioner satisfies both prima facie showings, then the trial court proceeds to the next level of review by issuing an order to show cause and conducting a hearing pursuant to the procedures set forth in section 1170.95, subdivision (d). (§ 1170.95, subd. (c); *Drayton, supra,* 47 Cal.App.5th at pp. 980-981; *Verdugo, supra,* 44 Cal.App.5th at pp. 328-329.)

## B.     Consideration of the Preliminary Hearing Transcript

Not all petitions for resentencing need to proceed to an evidentiary hearing.  Relief under section 1170.95 "is only available to a person convicted of felony murder or murder under a natural and probable consequences theory." (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166 (*Nguyen*), review denied Nov. 10, 2020, S264735.)  When "a review of the court file shows the petitioner was convicted of murder without instruction or argument based on the felony murder rule or [the natural and probable consequences doctrine]," it is appropriate to summarily deny a petition under 1170.95 based on a failure to establish a prima facie showing of eligibility for resentencing. (*Lewis, supra,* 43 Cal.App.5th at p. 1138.)

For purposes of review at the prima facie stage under section 1170.95, the "record of conviction" includes the transcript of the preliminary hearing. (*People v. Falcon* (2020) 57 Cal.App.5th 272, 277, review granted Jan. 27, 2021, S266041; *People v. Perez* (2020) 54 Cal.App.5th 896, 904-905, review

granted Dec. 9, 2020, S265254; *Nguyen, supra*, 53 Cal.App.5th at p. 1166; see also *People v Reed* (1996) 13 Cal.4th 217, 223 [a preliminary hearing transcript is part of the record of conviction for purposes of proving a prior serious felony conviction under § 667, subd. (a)].)

A preliminary hearing transcript may demonstrate a petitioner was convicted as a direct aider and abettor, such as when the petitioner stipulated to a factual basis for a guilty or no contest plea based on the preliminary hearing transcript, and that transcript shows the only theory advanced by the prosecution was an aiding and abetting theory. (See *Nguyen, supra*, 53 Cal.App.5th at p. 1166.) The facts established at a preliminary hearing also may support a denial of a section 1170.95 petition when there is no mention in the record of any underlying felony that could have been used as the basis for felony murder liability, or any target offense or conduct that could have formed the basis of liability under the natural and probable consequences doctrine. (*Nguyen, supra*, at p. 1167; see *People v. Falcon, supra*, 57 Cal.App.5th at pp. 278-279 [upholding denial of § 1170.95 petition at prima facie stage in reliance on facts presented at the preliminary hearing, which established the petitioner was prosecuted solely on the theory he was a direct aider and abettor]; *People v. Perez, supra*, 54 Cal.App.5th at pp. 906-907 [same where the facts presented at the preliminary hearing established the petitioner was prosecuted as the actual killer].)

## C. The Trial Court Erred in Summarily Denying Zapata's Section 1170.95 Petition

The trial court denied Zapata's petition for resentencing based on evidence in the record supporting a direct aider and

9

abettor theory.  To prove liability for murder as a direct aider and abettor, "the prosecution must show the defendant acted with knowledge of the perpetrator's criminal purpose and with the intent of committing, encouraging, or facilitating commission of the offense."  (*Nguyen*, *supra*, 53 Cal.App.5th at p. 1164.)

In order to find Zapata aided and abetted Sanchez, the trial court relied on the facts presented by counsel as contained in the pre-plea probation report, the preliminary hearing transcript, and portions of the transcript from Sanchez's jury trial.  There is nothing in the record to indicate the trial court reviewed the felony information filed against Zapata, any record of his plea agreement, or a transcript of the plea colloquy.  No such documents have been provided as part of the record on appeal, nor have they been located pursuant to our request for further review of the superior court file.

The trial court's approach does not comport with the statutory scheme of section 1170.95.  Without a charging document, plea transcript, or record of the plea agreement, it is not possible to confirm whether, as a matter of law, Zapata's conviction is still valid under the law as amended by Senate Bill No. 1437.  (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 981-982 [where the prosecutor agreed the petitioner's guilty plea was premised on a felony murder theory, the trial court erred at the prima facie stage by relying on facts established at the preliminary hearing to find the petitioner acted with reckless indifference to human life]; cf. *Nguyen*, *supra*, 53 Cal.App.5th at pp. 1166-1167 [upholding denial of § 1170.95 petition at prima facie stage in reliance on facts reflected in the preliminary hearing transcript, where the petitioner stipulated to the preliminary hearing as the factual basis for his guilty plea to

10

second degree murder, the prosecutor relied only on an aider and abettor theory, and no underlying felony or target offense was charged].)

The trial court also erred in relying on the pre-plea probation report and portions of the transcript of Sanchez's trial to deny relief at this stage of review. (See *People v. Falcon*, *supra*, 57 Cal.App.5th at p. 278 [agreeing that the trial court erred in relying on records of the codefendant's trial in conducting review of a petition under § 1170.95 at the prima facie stage].)

The limited record of conviction does not establish *as a matter of law* that Zapata is ineligible for relief under section 1170.95. Therefore, the matter must be remanded for an order to show cause pursuant to section 1170.95, subdivision (c), and a hearing pursuant to section 1170.95, subdivision (d), during which the parties may "rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) At the hearing, the trial court is not restricted to reviewing the documents included in the current record. We express no opinion on Zapata's ultimate entitlement to relief following a hearing.

11

## DISPOSITION

The order denying the petition for resentencing under section 1170.95 is reversed and the matter is remanded to the superior court.  On remand, the superior court shall issue an order to show cause and conduct a hearing in accordance with section 1170.95, subdivisions (c) and (d).

NOT TO BE PUBLISHED

FEDERMAN, J.\*

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.