Filed 9/28/21  P. v. Street CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091621 |
| Plaintiff and Respondent, | (Super. Ct. No. 98F04080) |
| v. | |
| KIMSHANA LAVORIS STREET, | |
| Defendant and Appellant. | |

This case presents a question regarding when a trial court can summarily deny a Penal Code section 1170.95[1] petition attacking a second degree murder conviction obtained through a plea.  Defendant Kimshana Lavoris Street contends on appeal the trial court erred in finding her ineligible for relief, this ruling was supported by improper fact-

---

[1]     Undesignated statutory references are to the Penal Code.

finding, and trial counsel was ineffective in failing to present any argument or evidence supporting her eligibility for relief.

We find the factual basis of the plea supports the finding that defendant was ineligible for relief, and counsel at the section 1170.95 hearing was not deficient. We shall affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

We take the relevant facts of defendant's crime from the factual basis of her plea and the preliminary hearing.

The following evidence was presented at the preliminary hearing:

In the Autumn of 1997, defendant called her friend Michele Walker and told her to come over to defendant's home. Cocaine was missing from defendant's home and she suspected that Oletha Bradford had taken it. Walker stored cocaine at defendant's home. Walker drove over and found Bradford had sustained a beating and had blood on her face. Walker took the remaining drugs to her uncle's house and went home. Upon arriving home, she found defendant, Willetta Gainous, and Lafeat Chainey had come over in a Chevrolet Blazer. Bradford was in the rear cargo area of the SUV. Walker assented to Gainous's request that she drive them in the Blazer. As Walker drove, Gainous told her something had to happen to Bradford because she had been beaten up so badly. Gainous said she beat Bradford and did not want to go to jail for beating her this badly. Chainey said they should just "break her neck."

Walker testified that Chainey got a box cutter from the center console, reached back, and sliced Bradford in the face area. Chainey passed the box cutter to defendant and said, "Hey, you got to cut her, [b]ecause I'm not going to be the only one taking the blame." She also told defendant that they were doing this for her girl, Gainous. According to Walker, defendant turned around to face Bradford in the rear cargo area where Bradford was lying, but she could not recall what defendant did after that.

2

Gainous repeatedly encouraged defendant and Chainey by telling them they had to kill Bradford because Gainous did not want to go to jail for beating Bradford.

When Walker stopped the SUV, she, defendant, and Chainey got out, opened the back, and took Bradford's body to a nearby canal. After Walker drove them home, defendant and Chainey took the Blazer to a car wash.

Sacramento Police Detective Richard Overton testified that he interviewed Shazzan Cason. Sometime in Autumn 1997, defendant came over to Cason's residence, where she admitted to cutting Bradford's throat with a razor. Defendant said she and her girlfriend Gainous suspected Bradford stole some cocaine from their residence. She also told Cason that Gainous was present when Bradford was killed.

In an interview with Detective Overton in Georgia, defendant admitted fleeing there after learning there was a warrant for her arrest for murder. Defendant had lived with Gainous and Bradford. Bradford was killed inside an SUV while the vehicle was traveling in the vicinity of Arco Arena. Walker drove, Gainous was in the front passenger seat, Chainey in the rear driver's-side seat, and defendant was in the rear passenger-side seat. Defendant admitted to beating Bradford; when Chainey handed her a cutting instrument like a razor and told her to use it, defendant started hacking or slashing Bradford with it. Following the attack, she and Chainey left the vehicle and put Bradford's body in some water along the side of the road. Defendant admitted she had been upset with Bradford because she had gone into defendant's and Gainous's room, stole things, rearranged things, and generally disrespected them.

Detective Overton interviewed Gainous in Georgia. Gainous said they were all at a barbecue at her house earlier in the day when a fight broke out after they confronted Bradford about several issues. Gainous confirmed defendant's statements about where they drove and the seating arrangements. She told the detective that defendant and Chainey had cut Bradford with a retractable blade and that they dumped Bradford's body in a drainage ditch after the attack.

3

Chainey told Detective Overton that she was in the SUV when Bradford was killed. Defendant punched Bradford, took the knife, and started slashing Bradford. Chainey cut Bradford as well. During the incident, Gainous told defendant, "[i]f you love me, you'll do this for me," a reference to defendant cutting Bradford for Gainous.

Bradford's body was discovered in a drainage ditch in the Natomas area on October 25, 1997. The cause of death was large incision wounds to the neck, causing a total transection of the left jugular vein and carotid artery. Bradford also sustained multiple blunt force trauma injuries to her head, back, and shoulder, as well as incision wounds to her right cheek, temple, forehead, left cheek, and upper thigh. She also had cuts to her left arm, right wrist, and defensive wounds to the palm area and ring finger of her right hand.

Defendant was charged with murder (§ 187) with an enhancement for personal use of a dangerous weapon (§ 12022, subd. (b)). She pleaded no contest to second degree murder and admitted the personal use enhancement.

The factual basis for the plea was as follows:

"[O]n October 25, 1997, the victim Oletha Bradford's body was found in an irrigation or drainage canal in Sacramento County. The autopsy showed that she had suffered blunt force trauma about her head but that she died as a result of her throat being cut numerous times.

"Investigation eventually focused on this defendant, roommate Willetta Gainous and several other individuals. Eventually Miss Street and several others were contacted by law enforcement, interviewed, they lied about their responsibility in this matter and then they fled to Georgia and an arrest warrant was issued.

"Eventually they were apprehended in Georgia in September of 1998. They were reinterviewed. After going over the old lies, eventually this defendant did admit, as did some of the other defendants, that several days before Miss Bradford's body was found

4

that they had been with Miss Bradford, Miss Bradford was suspected by them of having stolen some of their rock cocaine.

"Miss Bradford got into a vehicle, some kind of sport utility vehicle, back in the cargo area Miss Street was in the rear passenger seat along with the co-defendant Lafeat [Chainey].

"During the drive around Sacramento, a cutting instrument was obtained from the console of the car, and both Miss [Chainey] and Miss Street used that instrument to cut Miss Bradford's throat, and that's what she died of.

"Miss Street did admit that to the detectives and to at least two of her friends."

The trial court sentenced defendant to 16 years to life in state prison. A panel of this court affirmed the judgment as modified in an unpublished opinion. (*People v. Street* (March 19, 2001, C035670) [nonpub. opn.].)

On February 11, 2019, defendant filed a pro per section 1170.95 petition seeking relief from her second degree murder conviction. The prosecution filed an opposition arguing that Senate Bill No. 1437 is unconstitutional and defendant failed to make a prima facie showing of eligibility as she was the actual killer, committed "malice murder," and acted in furtherance of the murder with the intent to kill. Defendant's appointed counsel filed a reply arguing defendant made a prima facie showing of eligibility and Senate Bill No. 1437 is constitutional.

The trial court denied the petition, finding defendant did not establish a prima facie case of eligibility, based on facts adduced at the preliminary hearing and change of plea hearing.

DISCUSSION

I

*Section 1170.95*

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017-2018 Reg. Sess.). Senate Bill No. 1437 was enacted to "amend the felony[-]murder rule and

5

the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Effective January 1, 2019, the legislation amended sections 188 and 189 and added section 1170.95 to the Penal Code.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The new section 1170.95 permits those convicted of felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts where: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The

6

petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

If the petitioner makes a prima facie showing that he or she is entitled to relief, the trial court shall issue an order to show cause. (§ 1170.95, subd. (c).) At the subsequent hearing to determine whether the petitioner is entitled to relief, the People have the burden of proving beyond a reasonable doubt "that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

Defendant contends the trial court erred in finding her ineligible because there was a factual issue whether she was ineligible, and the court deprived her of due process by making factual findings in support of ineligibility while ignoring evidence supporting eligibility. According to defendant, there was evidence she and two codefendants agreed to take the blame for killing Bradford. She claims the evidence presented four possibilities: that Chainey killed Bradford during the times she cut her, Chainey and defendant killed Bradford together, defendant killed Bradford, or defendant and the others inculpated defendant because they agreed to do so.[2] She asserts the trial court had to resolve any question of her liability in her favor at this stage, which it failed to do. She further claims it was error for the trial court to rely exclusively on the preliminary hearing

---

[2] Defendant bases the fourth listed possibility, that she and the others agreed to inculpate defendant, on Walker's preliminary hearing testimony that they all agreed for defendant to take the blame because she would do the least amount of time as she had not previously been in trouble.

transcript to find her ineligible for relief, as it was counter to the purpose of Senate Bill No. 1437.

In a case decided after briefing was concluded, our Supreme Court held the trial court may consider the record of conviction in determining whether a petitioner has stated a prima facie case for relief under section 1170.95. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) Since the transcript of the preliminary hearing is part of the record of conviction (*People v. Reed* (1996) 13 Cal.4th 217, 230), we reject defendant's claim that it was error for the trial court to rely on this in its ruling.

We also reject defendant's claim that there were unresolved factual issues regarding her eligibility that the trial court had to determine in her favor.

The trial court stated the following as justification for its ruling:

"It is clear from Defendant Street's own Mirandized statement to police and accomplice Walker's testimony at Defendant Street's preliminary hearing that had this matter gone to trial, the statement and Walker's testimony would have established beyond a reasonable doubt that defendant Street committed malice aforethought murder based on either express or implied malice. There was no underlying felony or target offense, and neither the felony-murder rule nor the natural and probable consequences doctrine would have applied, nor would the prosecution have attempted to prosecute the murder on either ground."

This was a plea to second degree murder based on defendant's intent to kill. This was not an assault that went too far or where defendant was a secondary accomplice to a crime where another accomplice killed the victim. Defendant's alleged unresolved factual issues are based on speculation that has no support in the consistent, uncontradicted evidence in the record of conviction.[3] The factual basis of the plea shows

---

[3] Defendant also claims that she could be convicted of second degree felony murder based on the inherently dangerous felony of assault with a box cutter and second degree

8

defendant was ineligible for relief as a matter of law because she intended to kill her victim.

Since defendant admitted in the factual basis of her plea that she joined with her codefendant in slashing the victim's throat until she died, it is clear as a matter of law that her case had nothing to do with felony murder or murder under the natural and probable consequences doctrine, and defendant's petition was correctly denied for failing to establish a prima facie case for relief.

II

Defendant claims appointed counsel for her section 1170.95 petition was ineffective in failing to address her eligibility for relief based on the arguments and interpretations set forth in her opening brief on appeal.

A claim of ineffective assistance requires defendant to show substandard performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-692 [80 L.Ed.2d 674].) To establish prejudice, "the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

"Counsel is not ineffective for failing to make frivolous or futile motions." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) The claims defendant makes on appeal regarding her eligibility were unavailing here and would be equally so had they been made at the hearing. She has failed to carry her burden of establishing counsel was ineffective or that she was prejudiced by counsel's representation.

---

felony murder was abolished by Senate Bill No. 1437. While we agree that second degree felony murder was abolished by Senate Bill No. 1437 (see *In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2), this does not help defendant as assault with a deadly weapon cannot support liability for second degree felony murder because doing so effectively precludes " 'the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides.' " (*People v. Bryant* (2013) 56 Cal.4th 959, 966.)

## DISPOSITION

The order denying the petition is affirmed.

_____/s/_____
BLEASE, Acting P. J.

We concur:

_____/s/_____
DUARTE, J.

_____/s/_____
RENNER, J.