Filed 6/28/24  P. v. Martinez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B328594 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA113251) |
| v. | |
| EDGAR OMAR MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Edgar Omar Martinez (defendant) appeals the summary denial of his petition for resentencing under Penal Code section 1172.6.[1] We affirm the trial court's order denying the petition because the record of conviction, including the preliminary hearing transcript, unequivocally establishes that defendant was the sole perpetrator of voluntary manslaughter and attempted voluntary manslaughter, crimes to which he pleaded guilty.

## BACKGROUND

In 2018, defendant pleaded no contest to the voluntary manslaughter of Victor Garcia (Victor) and attempted voluntary manslaughter of Christian Garcia (Christian).[2] Defendant further admitted that he personally used and discharged a firearm in the voluntary manslaughter of Victor. Pursuant to a negotiated plea agreement, defendant was sentenced to a 21-year prison term, consisting of 11 years for voluntary manslaughter, a consecutive term of 10 years for personal use of the firearm, and a concurrent term of three years for attempted voluntary manslaughter.

**Preliminary hearing**

At the January 24, 2017 preliminary hearing, Christian testified that he and his brother Victor were in their father's truck in the City of El Monte at approximately 6:00 p.m. on July 9, 2016. Victor was driving and Christian was in the passenger seat as they approached the intersection of Peck Road and Mountain View Road. Victor turned right on Peck Road,

---

[1] All further statutory references are to the Penal Code.

[2] Because the victims share the same surname we refer to them by their first names to avoid confusion.

2

cutting off a black SUV traveling on Peck Road in the same direction.  The driver of the SUV pulled up next to the truck and made hand signs at Victor and Christian through the SUV's open window.  The SUV then began following Victor and Christian.

Victor turned off Peck Road onto several side streets, but the SUV continued to follow.  Victor eventually stopped near the intersection of Klingerman Street and Cogswell Road, and both he and Christian exited the truck.  Four people exited the SUV at the same time.  Christian saw defendant exit from the front driver's side of the SUV, holding a black revolver.  One of the other three occupants of the SUV held a knife with a six-inch blade, and the other two wielded sticks.

Victor was approximately 18 feet ahead of Christian as they approached the occupants of the SUV.  When Victor and the occupants of the SUV were approximately eight feet apart, the person holding the knife lunged toward Victor and stabbed him.  At the same time, defendant extended the revolver and pointed it at Christian.

Victor and Christian ran back to their truck.  Victor entered the driver's side of the vehicle and Christian entered the passenger seat.  The three individuals wielding the knife and sticks chased them and began hitting the side of the truck.  Victor started the engine, made a U-turn, and drove back toward the intersection of Cogswell Road and Klingerman Street.  As they drove past the SUV, Christian saw defendant raise his left hand and point the revolver at them.  Christian ducked when he heard a gunshot.  Moments later Victor said he had been shot.  Christian looked over and saw Victor bleeding from his mid-section.  No longer able to drive, Victor stopped, exited the truck,

3

and lay down on the ground. He died at the scene from the gunshot wound.

On July 11, 2016, two days after the shooting, Christian met with detectives. From a seven-page array of photographs, Christian identified defendant as the person who shot Victor. Christian testified that he was one "hundred percent" positive that the person he identified in the photograph was the shooter. Video footage recovered by detectives from surveillance cameras near the crime scene showed a man standing near the front driver's side of a black Jeep Grand Cherokee SUV with his arm outstretched and pointing a handgun at the victims' truck. The man appeared to be tracking the movement of the truck with the gun as the truck approached him. As the truck passed, the man's hand flew back, propelled by the recoil of the handgun.

**The charges and plea agreement**

A three-count information charged defendant in count 1 with the willful, deliberate, premeditated murder of Victor. (§ 187, subd. (a).) Count 2 charged defendant with the attempted willful, deliberate, and premeditated murder of Christian (§§ 664/187, subd. (a).) As to both counts 1 and 2, the information alleged that defendant personally and intentionally discharged a handgun which caused great bodily injury and death to Victor (§ 12022.53, subd. (d)), that he personally and intentionally discharged a handgun (§ 12022.53, subd. (c)), and that he personally used a handgun. (§ 12022.53, subd. (b).) Count 3 charged defendant with possession of a firearm by a felon. (§ 29800, subd. (a)(1).) As to all three counts, the information further alleged that defendant had one prior prison conviction. (§ 667.5, subd. (b).)

4

After the preliminary hearing and pursuant to a plea agreement, the information was amended to add count 4, the voluntary manslaughter of Victor (§ 192, subd. (a)), with the appended allegation that defendant personally used a firearm in the commission of that crime (§ 12022.5, subd. (a)), and count 5, the attempted voluntary manslaughter of Christian. (§ 664/192, subd. (a).)

In exchange for a 21-year sentence, defendant pleaded no contest to the manslaughter charges and admitted the firearm allegation. As to the firearm allegation, the court accepting the plea asked defendant: "Do you admit that you personally used a firearm in the commission of that voluntary manslaughter upon Victor Garcia? Do you admit the truth?" Defendant responded, "Yes." On his plea form, defendant stipulated and agreed that there was a factual basis for his pleas and admissions.

**Petition for resentencing**

On February 18, 2022, defendant filed a petition for resentencing under what is now section 1172.6. On the form petition, defendant checked the boxes stating he was convicted of murder, attempted murder, or manslaughter following a trial or acceptance of a plea offer in lieu of a trial at which he could have been convicted of murder or attempted murder, and that he presented a facially sufficient petition and requested appointment of counsel to represent him. Defendant also submitted a letter stating in relevant part: "As there is new changes in the law and I would not be today convicted of attempted murder, manslaughter or murder [due] to changes in Penal Code 1170.95 I ask the court to vacate my conviction in the interest of justice."

5

The District Attorney of Los Angeles County opposed the petition, arguing that defendant failed to make a prima facie case for relief under section 1172.6 because defendant was prosecuted as the actual perpetrator of an unlawful killing under a theory of actual malice, and not under a theory of felony murder, natural and probable consequences, or any other theory of imputed malice. The reporter's transcripts of defendant's preliminary hearing, plea and sentencing proceedings, and the probation officer's report were attached as exhibits to the district attorney's opposition.

At the January 25, 2023 hearing on whether defendant made a prima facie showing of entitlement to relief under section 1172.6, the trial court heard argument from the parties and denied defendant's petition. The court determined that defendant was not entitled to relief as a matter of law because he was prosecuted as a direct perpetrator, not an accomplice or under a felony-murder theory of liability. This appeal followed.

## DISCUSSION

### I. Applicable legal principles

#### A. Senate Bill 1437 and imputed malice murder

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015; SB 1437) in 2018, effectively abolishing the natural and probable consequences doctrine in cases of murder and limiting the application of the felony-murder doctrine. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) With one narrow exception (§ 189, subd. (f)), SB 1437 effectively eliminated murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the

6

natural and probable consequences doctrine—unless the prosecutor also proves that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§§ 188, subd. (a)(3) & 189, subd. (e).)

SB 1437 amended the felony-murder rule to provide that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) SB 1437 amended section 188 to require that, when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)

### B. Section 1172.6

SB 1437 also added former section 1170.95 (now § 1172.6), providing a procedure for vacating the murder convictions of defendants who could no longer be convicted of murder because of the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4; *Lewis, supra,* 11 Cal.5th at pp. 959, 971; *Gentile, supra*, 10 Cal.5th at p. 843.) Section 1172.6, subdivision (c) requires the trial court to appoint counsel when requested upon the filing of a

properly pleaded petition for resentencing.  (*Lewis*, at pp. 963, 966.)  The court must then conduct a prima facie analysis with briefing to determine the petitioner's eligibility for relief, and, if the requisite prima facie showing is made, issue an order to show cause.  (§ 1172.6, subd. (c); *Lewis,* at p. 971; *People v. Nieber* (2022) 82 Cal.App.5th 458, 469–470.)  Effective January 1, 2022, Senate Bill No. 775 amended section 1172.6 to expand its coverage to individuals convicted of "attempted murder under the natural and probable consequences doctrine."  (§ 1172.6, subd. (a); *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

In conducting its prima facie review, the trial court may not engage in fact finding involving the weighing of evidence or credibility determinations and must assume the truth of all facts stated in the petition.  (*Lewis, supra*, 11 Cal.5th at pp. 971–972.)  But the trial court may consider the record of conviction to determine whether the petitioner made the requisite prima facie showing of entitlement to relief under section 1172.6, thereby "allowing the court to distinguish petitions with potential merit from those that are clearly meritless.  This is consistent with the statute's overall purpose:  to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis,* at p. 971.)  Accordingly, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Ibid.*)  Only if the trial court determines that the petitioner has made a prima facie showing of entitlement to relief must it issue an order to show cause. (§ 1172.6, subd. (c).)

8

## C. Preliminary hearing transcript

When a defendant's conviction follows a guilty plea rather than a trial, the record of conviction may include the transcript of the defendant's preliminary hearing if the transcript "reliably reflect[s] the facts of the offense for which the defendant was convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223; see *People v. Patton* (2023) 89 Cal.App.5th 649, 657, review granted June 28, 2023, S279670 (*Patton*).)[3]

"Courts of Appeal are split on the import of the preliminary hearing transcript in determining whether a petitioner has made a prima facie case for resentencing under [former] section 1170.95 [now section 1172.6]." (*People v. Flores* (2022) 76 Cal.App.5th 974, 989; compare *People v. Mares* (2024) 99 Cal.App.5th 1158, 1167 [record of conviction, including preliminary hearing transcript, supported no theory other than defendant acted alone as the actual killer], review granted May 1, 2024, S284232; *People v. Pickett* (2023) 93 Cal.App.5th 982 [courts can rely on preliminary hearing transcripts to determine prima facie eligibility even if a defendant does not stipulate to it as a factual basis for a plea], review granted Oct. 11, 2023, S281643; *Patton, supra,* 89 Cal.App.5th 649 [court may rely on preliminary hearing transcript at prima facie stage if evidence contained therein is uncontroverted], rev.gr.; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166, with *People v. Davenport* (2021) 71 Cal.App.5th 476, 481 [trial court erroneously relied on preliminary hearing transcript in making prima facie determination because defendant did not stipulate to the

---

[3] See California Rules of Court, rules 8.1105, 8.1115.

transcript as a factual basis for his plea]; *Flores*, *supra*, 76 Cal.App.5th 974.) The issue is pending before the California Supreme Court in *Patton, supra,* 89 Cal.App.5th 649, rev.gr.)

### D. Standard of review

We review de novo whether the trial court properly denied defendant's section 1172.6 petition without issuing an order to show cause. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

## II. No error

We conclude that where, as here, defendant's conviction was based on his no contest plea, the trial court properly considered the preliminary hearing transcript in determining whether defendant made a prima facie case for relief under section 1172.6. (*Patton, supra,* 89 Cal.App.5th at p. 657, rev.gr.) The preliminary hearing transcript unequivocally establishes that defendant was the sole shooter and Victor's actual killer. Defendant when entering his plea further admitted that he personally used and discharged a firearm in committing the voluntary manslaughter of Victor. The trial court did not engage in improper fact finding at the prima facie stage in finding defendant ineligible for relief under section 1172.6. The statute does not apply to actual killers, and defendant is therefore ineligible for relief under section 1172.6 as a matter of law.

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.


11