Filed 10/2/25  P. v. Campbelljankans CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JACOBY LEKYLL CAMPBELLJANKANS,<br><br>    Defendant and Appellant. | G064116<br><br>(Super. Ct. No. FWV1500187)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of San Bernardino County, Bridgid M. McCann, Judge. Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

In 2016, Jacoby Lekyll Campbell-Jankans,[1] after being charged with murder, pleaded guilty to voluntary manslaughter and a handful of other charges. He appeals the denial of his petition for resentencing under Penal Code section 1172.6.[2] In its prima facie review of the petition, the trial court found Campbell-Jankans was ineligible for relief because he could not show he was convicted of voluntary manslaughter under now-invalid theories of felony murder or the natural and probable consequences doctrine.

Campbell-Jankans argues the trial court erred in its denial because it engaged in impermissible factfinding at the prima facie stage. Specifically, he claims the court improperly considered the transcript of the preliminary hearing.

The California Supreme Court recently rejected this argument in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*). Because we find the preliminary hearing transcript contained unchallenged, relief-foreclosing facts to refute the checkbox allegations in Campbell-Jankans' petition, we affirm the court's postjudgment order.

FACTUAL AND PROCEDURAL HISTORY

On January 23, 2015, a first amended felony complaint was filed against Campbell-Jankans, accusing him of murdering Alicia Igou on April 28, 2014. In connection with the murder count, the complaint alleged

---

[1] We note defendant's last name is listed variously in the record as "Campbell Jankans," "Campbelljankans" and "Campbell-Jankans." Although we adhere to the spelling of the name listed in the abstract of judgment for purposes of captioning the case ("Campbelljankans"), we use the hyphenated spelling in this opinion, as the hyphenated spelling was used in defendant's own briefing.

[2] All further statutory references are to the Penal Code.

Campbell-Jankans had personally and intentionally discharged a firearm, causing great bodily injury. (See § 12022.53, subd. (d).) The court conducted a preliminary hearing on January 28, 2015.

Igou's roommate testified he lived at the residence with his girlfriend, their two-year-old daughter, and Igou. On the morning of Igou's death, the girlfriend had already left the home for work. The roommate could hear Igou speaking while he changed his daughter in the bedroom. As he did so, Campbell-Jankans suddenly opened the door and said, "'You didn't hear that.'" He showed the roommate a gun in his right hand.

The roommate had not heard anything, so he secured his daughter in the bedroom and went to Igou's bedroom. When he entered Igou's room, he saw her lying on the bed with blood pooling under her head and Campbell-Jankans near the window. Campbell-Jankans told him "'she grabbed the gun.'"

Ontario Police Officer Hernandez was dispatched to Igou's home. En route, dispatch told him a man had called in. Officer Hernandez called the man back. The man told Officer Hernandez he had accidentally shot a woman in the residence. When Officer Hernandez arrived on scene, he saw Campbell-Jankans emerging from the home with another police officer.

After the preliminary hearing, an information was filed on January 30, 2015, charging Campbell-Jankans with murder, attempted second degree robbery, and first degree burglary.

On September 9, 2016, Campbell-Jankans and the prosecutor agreed Campbell-Jankans would plead guilty to the lesser-included offense of voluntary manslaughter, as well as first degree burglary, first degree robbery, carrying a loaded firearm, and vandalism, which would ultimately

reduce his sentence to 25 years in prison. The trial court found a factual basis for the plea and imposed a total determinate sentence of 25 years in prison.

On August 23, 2023, Campbell-Jankans filed a petition for resentencing under section 1172.6. His form petition, on which he checked boxes indicating his eligibility for relief, alleged as follows: (1) the complaint and information filed against him allowed the prosecution to proceed under a theory of felony murder, natural and probable consequences, or imputed malice based on a person's participation in a crime; (2) he was convicted of manslaughter following a plea offer in lieu of a trial at which he could have been convicted of murder; and (3) he could not presently be convicted of murder because of changes to sections 188 and 189 effective January 1, 2019.

The trial court appointed counsel for Campbell-Jankans and held a hearing to determine his eligibility for resentencing under section 1172.6. Campbell-Jankans introduced no other facts or evidence in support of his petition.

After taking the matter under submission, the court issued findings and rulings on March 15, 2024. It found Campbell-Jankans was not eligible for relief because he had not made a prima facie showing that he could not be convicted of murder after the changes to sections 188 and 189.

DISCUSSION

I.

THE TRIAL COURT PROPERLY FOUND CAMPBELL-JANKANS WAS INELIGIBLE FOR RELIEF UNDER SECTION 1172.6

"[T]he path to resentencing under section 1172.6 involves three stages. It begins with a facially valid petition that entitles petitioner to counsel, continues with asking whether petitioner has made a prima facie case for relief, and, if so, proceeds to an evidentiary hearing on the ultimate

4

question of whether petitioner should be resentenced. If a petitioner who files a facially valid petition fails, at the second step, to make a prima facie showing, then the court denies the petition and provides no relief. (§ 1172.6, subd. (c).)" (*Patton*, *supra*, 17 Cal.5th at p. 562.)

*A. Prima Facie Showing*

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) The court's prima facie inquiry is limited but not "simply duplicative of the facial inquiry." (*Patton*, *supra*, 17 Cal.5th at p. 562.) As our Supreme Court stated in *People v. Lewis* (2021) 11 Cal.5th 952: ""'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [those] factual allegations were proved. If so, the court must issue an order to show cause.'" [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner.""" (*Id.* at p. 971) The court "cautioned that '[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in "factfinding involving the weighing of evidence or the exercise of discretion.""" (*Patton*, at p. 563.)

In *Patton*, the high court clarified that "a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima

facie showing. Where facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not "'factfinding involving the weighing of evidence or the exercise of discretion.'"" (*Patton, supra*, 17 Cal.5th at pp. 565–566, fn. omitted.)

*B. The Record of Conviction*

"[T]here is no dispute that the record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea. (*People v. Reed* (1996) 13 Cal.4th 217, 223.)" (*Patton, supra*, 17 Cal.5th at p. 568.) A court considering a petition for resentencing under section 1172.6 may not use preliminary hearing transcripts to prove disputed facts. However, where the prima facie inquiry does not require the resolution of a factual dispute and the preliminary hearing transcript "contribute[s] specific factual assertions about [petitioner's] conviction," "conclusory checkbox allegations alone [do] not create a factual dispute about whether [petitioner] played a meaningfully different role" in the killing. (*Patton*, at p. 568.)

Here, the trial court correctly concluded the pleadings and plea agreement indicate Campbell-Jankans was the actual shooter. He was the only defendant charged in the crime, and he was charged with murder using a firearm. Additionally, the preliminary hearing transcript in this case contributes specific factual assertions—unchallenged by Campbell-Jankans—that bolster this conclusion.

The transcript establishes only Campbell-Jankans, Igou, Igou's roommate, and his young daughter were in the home at the time of the killing, and the roommate and his daughter were in their own bedroom.

Campbell-Jankans was in possession of the gun. His statement to Igou's roommate—"You didn't hear that"—suggests there had been a

6

gunshot. His statement to Officer Hernandez that he had shot someone in the residence is an admission he was the shooter.

Furthermore, Igou's roommate testified only Igou and Campbell-Jankans were in Igou's bedroom when he entered, and by then she was already deceased. When the roommate asked Campbell-Jankans what had occurred, he said Igou had grabbed the gun.

There is nothing in the record leaving open the possibility of another person being responsible for the shooting. Because Campbell-Jankans was convicted as the actual killer and not on a now-invalid theory of vicarious liability, he is ineligible for resentencing as a matter of law. Therefore, the trial court correctly denied his petition at the prima facie stage of the proceedings.

## DISPOSITION

The postjudgment order denying Campbell-Jankans's petition for resentencing under section 1172.6 is affirmed.

GOODING, J.

WE CONCUR:

DELANEY, ACTING P. J.

SCOTT, J.

7